(September 15, 1980)

■ AETNA INSURANCE COMPANY, Respondent, v DOROTHY J. SPRINGS-TEEN, as Guardian ad Litem, et al., Respondents, and ARTHUR W. BRAIMAN et al., Appellants.—In an action to enforce a lien pursuant to subdivision 2 of section 673 of the Insurance Law, defendants Arthur W. Braiman, Vassar Brothers Hospital, the Poughkeepsie Anesthesia Group, P. C., Robert A. Seitz, Roberta Olivo, Eleanor Brendline, Hartford Accident and Indemnity Company, Stephen B. Taft, Sidney B. Gordon, Sidney B. Gordon, P. C., Michael Ettenson, Michael Ettenson, P. C., and CNA Insurance Company appeal from an order of the Supreme Court, Dutchess County, dated November 15, 1979, which, on motions for summary judgment, inter alia, (1) granted judgment in favor of defendant Dorothy Jean Springsteen, dismissing the complaint as against her in her individual capacity, (2) granted plaintiff's motion for summary judgment against defendant Dorothy Jean Springsteen, as guardian ad litem of her husband Lawrence E. Springsteen, Arthur W. Braiman, Vassar Brothers Hospital, Stephen B. Taft, the Pough-keepsie Anesthesia Group, P. C., Robert A. Seitz, individually and/or as a member of the professional corporation known as the Poughkeepsie Anes-thesia Group, P. C., Sidney B. Gordon, M.D., Sidney B. Gordon, P. C., Michael Ettenson, M.D., Michael Ettenson, P. C., Roberta Olivo, Diane Osterman, Eleanor Brendline, Diane Rogers, Argonaut Insurance Company, CNA Insurance Company, and Hartford Accident and Indemnity Company, and (3) ordered an immediate trial to determine the amount of the plain-tiff's lien and the portion thereof to be borne by each of these defendants. Order modified, on the law, by deleting from the sixth decretal paragraph thereof the name of defendant Arthur W. Braiman, and adding thereto the following provision: "and the motion of the plaintiff seeking summary judgment be and the same hereby is denied as against the defendant Arthur W. Braiman." As so modified, order affirmed, with one bill of $50 costs and disbursements to plaintiff payable jointly by the unsuccessful defendants-appellants appearing separately and filing separate briefs. Plaintiff, the Aetna Insurance Company, was the automobile insurer of the late Lawrence E. Springsteen, and had issued to him a standard New York State no-fault insurance policy. On May 3, 1974, while that policy was still in effect, Mr. Springsteen's car was struck in the rear by a vehicle owned and operated by one Philip E. Minor, which vehicle was insured by the Government Employ-ees Insurance Company. Thereafter, on April 18, 1975 (again during the term of the Aetna policy), Mr. Springsteen was involved in a second two-car collision, when an automobile owned by one Carmello Russo and operated by a Mr. Michael J. Treacy struck him in the rear. The Russo vehicle was insured by the National Grange Insurance Company. On June 22, 1975 Mr. Springsteen was admitted to the Vassar Brothers Hospital for surgery to correct a cervical derangement of his neck allegedly arising out of the two motor vehicle accidents. After that surgery, Mr. Springsteen never regained consciousness, and remained comatose until his death in 1978. In 1976, Mr.

Springsteen and his wife commenced a tort action (1) against the owners and operators of the Minor and Russo vehicles, based on negligence, and (2) against the hospital and the physicians and nurses who had attended Mr. Springsteen, sounding in malpractice. Prior to the settlement of that action, Aetna had paid Mr. Springsteen $50,000 in no-fault (first-party) benefits relative to the 1974 accident, but had refused to pay his claim with respect to the accident which occurred on April 18, 1975. Aetna was subsequently ordered to make such payments, however, and eventually expended an additional $50,000 as first-party benefits. The lawsuit was eventually settled in open court before Mr. Justice Sirignano for the agreed sum of $1,330,000 which was divided as follows: (1) $600,000 was to be placed in trust for the payment of Mr. Springsteen's medical and related expenses during the balance of his lifetime; (2) upon his death, 85% of the remaining trust principal was to revert to the insurance companies which had posted the fund, with the remainder (15%) going to Mr. Springsteen's estate in settlement of any wrongful death action; (3) $287,000 was to be paid to Dorothy Jean Springsteen in settlement of her cause of action for loss of services and loss of consortium; and (4) $443,000 was to be paid to Arthur W. Braiman, the Springsteens' attorney, as legal fees. On December 4, 1978 Mr. Springsteen died and, pursuant to the settlement agreement, $510,000, or 85% of the trust fund, reverted to the insurance companies. However, on or about December 12, 1978 the plaintiff, Aetna, commenced the instant action to enforce its statutory lien pursuant to subdivision 2 of section 673 of the Insurance Law for the $100,000 which it had paid out in first-party benefits. The defendants in this action are, *inter alia,* Mrs. Dorothy Jean Springsteen, individually and as the guardian ad litem of the late Mr. Springsteen, Arthur W. Braiman, her attorney, and the defendants in the medical malpractice action. Special Term, in the order appealed from, (1) dismissed the complaint as against Dorothy Jean Springsteen in her individual capacity and (2) granted summary judgment against the remaining defendants and directed that a trial be held to determine, *inter alia,* the amount of the plaintiff's lien. Subdivision 2 of section 673 of the Insurance Law provides, in pertinent part, as follows: "In any action by or on behalf of a covered person, against a noncovered person, where damages for personal injuries arising out of the use or operation of a motor vehicle or a motorcycle may be recovered, an insurer which paid or is liable for first party benefits on account of such injuries shall have a lien against any recovery to the extent of benefits paid or payable by it to the covered person." In addition, the term "covered person" is defined in subdivision 10 of section 671 of the Insurance Law as: "any pedestrian injured through the use or operation of, or any owner, operator or occupant of, a motor vehicle which has in effect the financial security required by articles six or eight of the vehicle and traffic law or which is referred to in subdivision two of section three hundred twenty-one of such law; or any other person entitled to first party benefits." Clearly, the plaintiff herein, as a no-fault insurer, was liable for and, in fact, paid out first-party benefits in the amount of $100,000 (see Insurance Law, §§ 671, 672), which sums also included treatment for injuries sustained as a result of the subsequent malpractice (see *Marino v Leonard,* 75 AD2d 639; *Dubicki v Maresco,* 64 AD2d 645). Moreover, since the defendants in that malpractice action are not "covered persons" within the meaning of the statute, they must be considered "noncovered" persons for the purposes of subdivision 2 of section 673, and Special Term was therefore justified in concluding, as a matter of law, that the sums contributed by these defendants in compromise of the decedent's personal injury action

(which sums have since reverted, in large part, to the respective insurers) are both covered by that subdivision and subject to the plaintiff's lien. However, the further question of whether the plaintiff may also assert its lien against the funds which were ultimately paid as counsel fees to the Springsteens' attorney (Mr. Braiman) raises a different issue which cannot be determined as a matter of law, for while the latter, by virtue of section 475 of the Judiciary Law, possessed a lien for his fee which dated from the commencement of the underlying action (and therefore was prior in time to the plaintiff's lien) (see *Matter of Cooper [McCauley],* 291 NY 255, 261; *Matter of City of New York [Paulson],* 31 AD2d 895), said lien is nevertheless limited to the *terms* of the retainer agreement and the attorney's taxable costs (see *Peri v New York Cent. & Hudson Riv. R. R. Co.,* 152 NY 521, 527-528). Accordingly, while plaintiff may not assert its lien against that portion of the $443,000 to which Mr. Braiman may be *legally* entitled as his attorney's fee, the very question of that entitlement raises issues of fact which necessitate a trial in order to determine (1) the terms of the retainer agreement, (2) the circumstances surrounding its execution (including the possibility of any overreaching), and (3) if a contingent fee was agreed upon, whether it was contemplated that the ultimate fee would be predicated on the "gross" recovery or the amount remaining after the reversion. In so deciding, we do not reach the question of the validity of the cross claims against Mrs. Springsteen for indemnification, since the validity of those claims was not considered by Special Term. Titone, J. P., Mangano, Rabin and Gulotta, JJ., concur.