JUDITH RECORD et al., Appellants, v ROYAL GLOBE INSURANCE COMPANY, Respondent.

Second Department, November 9, 1981

APPEARANCES OF COUNSEL

*Beasley & Andes (William Andes* of counsel), for appellants.

*Kelly, Rode, Kelly & Burke (John D. Kelly* and *Stephen P. Burke* of counsel), for respondent.

OPINION OF THE COURT

GULOTTA, J.

The question raised by this appeal concerns the effect of the settlement of a personal injury action and the release entered into as a result thereof upon the rights of the plaintiffs vis-à-vis their own insurance company under an "Additional Personal Injury Protection" indorsement to their policy of automobile liability insurance. We have concluded that the plaintiffs' actions did not impair the subrogation rights of their insurer, and that they are therefore entitled to recover additional first-party benefits to reimburse them for extended economic loss suffered on account of the underlying motor vehicle accident.

On June 28, 1975 plaintiff Judith Record (the wife of coplaintiff Gilbert Record) sustained serious physical injuries as the result of a one-car accident involving a vehicle owned and operated by one Charles Steppe. Judith Record was an occupant of that vehicle. At the time, Mr. Steppe was insured by the Colonial Penn Insurance Company under a $250,000 automobile liability policy which contained the mandatory $50,000 personal injury protection ("no-fault") indorsement. The Records, however, maintained their own liability insurance with the defendant Royal Globe Insurance Company, which included additional "no-fault" type coverage against extended economic loss through the mechanism of an optional indorsement entitled "Additional Personal Injury Protection" (see 11 NYCRR 65.3). The maximum benefit payable pursuant to this optional coverage is $150,000.

In July of 1975 the plaintiffs commenced a personal injury action against Mr. Steppe in the Supreme Court, Suffolk County, and sometime thereafter plaintiff Judith Record filed a claim for first-party benefits with Steppe's insurer, Colonial Penn. The verified complaint in the personal injury action alleges two causes of action: the first, on behalf of Judith Record, for conscious pain and suffering, and the second, on behalf of her husband, Gilbert, for medical expenses and loss of his wife's services. Notably, at or about the same time, plaintiffs notified their insurer, Royal Globe, that it might be called upon to

provide additional personal injury protection pursuant to its optional policy indorsement.

In March of 1977 the plaintiffs entered into a settlement agreement with Charles Steppe, and on or about March 25, 1977, a release was executed by them. The "release" is a standard "Blumberg" form general release, and pertinently provides as follows:

> "KNOW THAT WE, JUDITH RECORD AND GILBERT RECORD, individually and as husband and wife, both over the age of 18, residing at 177 Sayville Boulevard, Sayville, New York
>
>                                        as RELEASOR,
>
> in consideration of the sum of TWO HUNDRED TWENTY-FIVE THOUSAND and 00/100 ....................($225,000.00, received from
>
> CHARLES F. STEPPE
>
>                                        as RELEASEE,
>
> receipt whereof is hereby acknowledged, releases and discharges
>
> CHARLES F. STEPPE
>
>                          the RELEASEE, RELEASEE'S heirs,
>
> executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE."

However, appearing immediately below the foregoing "boiler plate" provision is the following typed limitation: "This release is limited to the third-party action for personal injuries to JUDITH RECORD and loss of services of GILBERT

RECORD. It in no way releases the COLONIAL PENN INSURANCE COMPANY or any other insurance carrier for payments due JUDITH RECORD under the no-fault provisions of the insurance law of the State of New York (Comprehensive Automobile Insurance Reparations Act)."

By letter dated May 10, 1977 plaintiffs notified their insurer (Royal Globe) that plaintiff Judith Record had exhausted the $50,000 which was available to her under Mr. Steppe's policy of insurance, and that "Mrs. Record's medical bills and loss of earnings having exceeded this $50,000 policy will now permit her to make a claim under the No Fault provisions of [her] policy of insurance * * * with [Royal Globe]". In response, Royal Globe indicated to the plaintiffs that its maximum exposure under their policy of insurance would be $100,000. In addition, by letter dated February 21, 1978, Royal Globe notified the plaintiffs of its claim, *inter alia,* "to have a lien on the proceeds of any recovery whether by judgment, settlement, or otherwise to the extent of the amount expended * * * [for] First Party Benefits, or additional benefits to be paid to the Applicant, Judith Record". In point of fact, however, Royal Globe apparently refused to make any payments whatsoever pursuant to its policy of insurance with the Records, whereupon the latter filed a demand for arbitration. Upon the consent of the parties this claim was subsequently withdrawn, and the instant action for a declaratory judgment was commenced.

In a memorandum decision dated July 3, 1980 (105 Misc 2d 1029) the Supreme Court, Suffolk County, determined, *inter alia,* that the plaintiffs, by executing a release in favor of Mr. Steppe, had failed to preserve the subrogation rights of the defendant, Royal Globe, for extended economic loss, and that the foregoing prejudice to the subrogation rights of their insurer operated to release it from any continuing liability under the policy. As indicated above, a judgment conforming to this decision was signed by the court on November 17, 1980. We reverse.

At the outset, we think it appropriate to note that the plaintiffs are seeking to recover under an optional indorsement (entitled "Additional Personal Injury Protection") contained in their policy of insurance with Royal Globe.

This indorsement, which is not, technically speaking, part of the no-fault statute (Insurance Law, § 670 *et seq.),* is, nevertheless, authorized by a regulation (11 NYCRR 65.3) promulgated by the Superintendent of Insurance pursuant to the general grant of authority contained in section 21 of the Insurance Law, and is directed at providing additional "no-fault" type first-party benefits in the event of extended economic loss arising out of a covered accident.

Generally, where an insured executes a general release in favor of a tort-feasor without reserving the rights of his insurer, the former is said to have impaired the latter's right of subrogation, and thereby relieves the insurer of any further liability under the policy (see *Aetna Cas. & Sur. Co. v Schulman,* 70 AD2d 792, mot for lv to app den 48 NY2d 608; *Davies v Nationwide Mut. Ins. Co.,* 99 Misc 2d 899; see, generally, 16 Couch, Insurance 2d, § 61:190 *et seq.).* On the present record, however, we cannot agree that the instrument executed by the Records was such a general release, or that the subrogation rights of their insurer (Royal Globe) regarding prospective payments to be made on account of Mrs. Record's extended economic loss were thereby impaired.

In order to determine whether the plaintiffs effectively impaired the subrogation rights of their insurer, it is necessary to construe the language of the release executed by them in favor of Mr. Steppe. Simply stated, a release is merely a species of contract, and as such, its construction is to be governed by the same principles of law applicable to other contracts (see 49 NY Jur, Release and Discharge, § 31). In interpreting the terms of a written agreement, the primary function of the court, of course, is to ascertain the intent of the parties as expressed in their writing (see, generally, 4 Williston, Contracts [3d ed], § 601), but where the language itself is ambiguous or susceptible to more than one interpretation, a court may look to the surrounding acts and circumstances as well (see *O'Neil Supply Co. v Petroleum Heat & Power Co.,* 280 NY 50, 56). Thus, in view of the fact that the plaintiff wife merely sought to recover for her conscious pain and suffering in her third-party action against the tort-feasor, and that the plaintiff husband specifically pleaded a *combined* cause of action both

for his wife's medical expenses and the loss of her services, we believe that the release at bar, which was "limited" *in haec verba "to the third-party action* for personal injuries to JUDITH RECORD and the loss of services of GILBERT RECORD" (emphasis supplied), did not constitute a general release of any and all liability which the tort-feasor may have had to the Records, but rather a *limited* release of (1) the wife's cause of action for conscious pain and suffering and (2) the husband's derivative cause of action for the loss of his wife's services. Accordingly, we conclude that the plaintiffs' cause of action for extended economic loss has not been released or compromised.

In *Government Employees Ins. Co. v Halfpenny* (103 Misc 2d 128), the defendant insured (Halfpenny) was involved in an automobile accident in New Jersey and subsequently collected over $49,000 in contractual first-party benefits from her insurer (GEICO) under an "Additional Personal Injury Protection" indorsement similar to the one at bar. In addition, Ms. Halfpenny commenced a third-party action against the alleged tort-feasor (Johnson) for the sum of $1,000,000 for injuries sustained as a result of the accident, but specifically limited her cause of action to those monetary damages (p 134) "[the] recovery [of] which would be authorized under [the] applicable New York no-fault statute", i.e., subdivision 1 of section 673 of the Insurance Law. Accordingly, when Halfpenny settled her cause of action against Johnson for $375,000 with the express understanding that (p 131) "the amount offered in settlement is for the personal injury claims asserted in the complaint", the court opined that the release executed by the injured party was not intended to encompass GEICO's subrogated claim for first-party benefits, and that it did not, therefore, operate to impair GEICO's rights. In so concluding, the court focused upon the fact that the third-party complaint made it clear that the subrogated items of damage were *not* encompassed within the prayer for relief, and reading the complaint in conjunction with the terms of the settlement agreement decided, *inter alia,* that the latter was not intended to effect a compromise of the subrogated claims (see, also, *Camden Fire Ins. Assn. v Bleem,* 132 Misc 22, 35 ["Where a release is so given and general in its terms, and

purports to release all claims whether embraced in the suit or not, such provisions of the release as attempt to go beyond the claim in suit and effect a general release of all claims are to be regarded as unauthorized and surplusage. *(Ocean A.&G. Corp.* v. *Hooker Electrochemical Co.,* 240 N.Y. 37.)"]).

By way of contrast, the court in *Kozlowski v Briggs Leasing Corp.* (96 Misc 2d 337, 339) held that a release which purported to be in settlement of an insured's third-party action "for pain, suffering *and* personal injuries" (emphasis supplied), and which specifically reserved the cause of action for property damages to the insured's automobile, encompassed all of the possible items of recoverable damage in a personal injury action, including that for economic loss. Accordingly, the court concluded that the plaintiff's insurer (GEICO) had a right of subrogation in the sum which the plaintiff had received in settlement of the third-party action equal to the amount expended on the plaintiff's behalf by the insurer as "extended economic benefits" under an "Additional Personal Injury Protection" indorsement in its policy of insurance. In rejecting the plaintiff's contention that the settlement was intended *solely* in compromise of the latter's cause of action for pain and suffering, the court relied on the language employed to effectuate the agreement, and noted generally that (pp 340-341): "There are three elements of damages which comprise the term 'personal injury' [as employed in tort litigation]: loss of earnings, medical expenses (these two being essentially 'economic loss' in the language of the no-fault statute), and mental and physical pain and suffering ('non-economic loss' in the language of the no-fault statute)".

While we do not disagree, as a general proposition, that the term "personal injuries" would normally encompass all recoverable items of damage in a personal injury action, we are nevertheless of the view that the term must be interpreted within the context in which it was used, so that when the plaintiff wife commenced her third-party action against Mr. Steppe for conscious pain and suffering and her husband alleged a multiple cause of action for medical expenses and loss of services, the ensuing release, which

was expressly "limited" to the "third party action for personal injuries to JUDITH RECORD and loss of services of GILBERT RECORD", must be read in relation to the underlying complaint as affecting merely the single cause of action actually pleaded by the wife (i.e., conscious pain and suffering) and so much of the husband's cause of action as sought a recovery for the loss of his wife's services. In fact, for us to construe the release more broadly as evincing an intention to release, as well, the Records' further claims for extended economic loss (i.e., medical expenses and loss of earnings in excess of "basic economic loss") (see Insurance Law, § 673, subd 1) would be to render the express limitation meaningless, for had the parties intended that the release at bar operate as a *general* release of any and all claims which the Records may have had against Mr. Steppe arising out of the accident, then there would have been no need for the addition of the typewritten limitation to the "boiler-plate" provisions of the "Blumberg" standard form. Inasmuch as the individual words and phrases are to be considered in relation to the agreement as a whole (see 4 Williston, Contracts [3d ed], § 601), and the instrument construed so as to accord an effect to each of its provisions (see, generally, 49 NY Jur, Release and Discharge, § 31), we cannot conclude that the parties to the action intended this document as a "general release" of any and all tort claims which the plaintiff insureds may have had against Mr. Steppe, or that the insurer's (Royal Globe's) right of subrogation regarding payments to be made on account of Mrs. Record's "extended economic loss" was thereby impaired. As indicated above, the plain language of the release evinces an intention to release, at best, only those causes of action for "noneconomic loss" (Insurance Law, § 671, subd 3) which were the subject of the third-party action commenced by the plaintiff insureds, and was not intended to release either the *unpleaded* cause of action for loss of earnings or the husband's derivative cause of action for medical expenses.

The foregoing conclusion is further buttressed by reference to the second sentence of the above-described typewritten paragraph, which pertinently provides that "It [the release] in no way releases the COLONIAL PENN INSURANCE

COMPANY *or any other insurance carrier* for payments due JUDITH RECORD under the no-fault provisions of the insurance law of the State of New York (Comprehensive Automobile Insurance Reparations Act)" (emphasis supplied). This, in our view, clearly manifests an intention on the part of the signatories to exclude from the release any and all claims which the Records may have had against *any* of the insurance carriers involved (i.e., both Colonial Penn and Royal Globe), for otherwise the addition of the typewritten language would have served no useful purpose. Moreover, since the only viable claim which the Records still retained against any insurance carrier at the time of the execution of the afore-mentioned release was Judith Record's claim for additional first-party benefits against Royal Globe pursuant to its "Additional Personal Injury Protection" indorsement (the Records' claim for basic economic loss against Colonial Penn had apparently been exhausted by that time), the evident meaning of the typewritten provision becomes all the more lucid.

In this regard, it may well be true that the use of the phrase "no-fault provisions of the insurance law of the State of New York" constituted an inartistic choice of words, as the benefits in dispute are not, strictly speaking, part of the mandatory coverage set forth in article 18 of the Insurance Law (the Comprehensive Automobile Insurance Reparations Act). In light of the parties' reference to more than one insurance carrier, however, the implication that they intended to preserve the plaintiffs' rights against their own insurance carrier is clear. Moreover, the mere fact that the indorsement in question constitutes a permissible (i.e., optional) policy provision arising under regulations promulgated by the Superintendent of Insurance, should not, in our view, operate to exclude it from the category of benefits payable to an insured "under the no-fault provisions of the insurance law of the State of New York", as the regulation under review (11 NYCRR 65.3) simply allows an insurer to enter into an optional agreement with its insured increasing the amount of available "no-fault" (first-party) benefits above the $50,000 mandatory minimum (cf. 11 NYCRR 65.2 [which sets forth the terms of the "Mandatory Personal Injury Protection" in-

dorsement]). Thus, notwithstanding the fact that the defendant Royal Globe's prospective liability for "no-fault" benefits is predicated *exclusively* upon a policy provision authorized by regulation rather than mandated by statute, we believe that it nevertheless falls within the ambit of the typewritten provision specifically reserving the plaintiffs' rights against "COLONIAL PENN * * * or any other insurance carrier for payments due JUDITH RECORD under the no-fault provisions of the insurance law of the State of New York". Having specifically reserved their rights against their own insurer, the release as executed by the plaintiffs did *not* impair the subrogation rights of the defendant (Royal Globe), and the latter is therefore required to fulfill its contractual obligations under the policy of insurance (see *Connecticut Fire Ins. Co. v Erie Ry. Co.,* 73 NY 399; *Brown v Vermont Mut. Fire Ins. Co.,* 83 Vt 161; 16 Couch, Insurance 2d, § 61:195; 5 Joyce, Insurance [2d ed], § 3542).

For all of these reasons, we have concluded that the plaintiffs are entitled to a judgment declaring that they have adequately preserved the subrogation rights of their insurer (Royal Globe), and that they have not, therefore, waived any right which they may have had to recover additional first-party benefits under the "Additional Personal Injury Protection" indorsement of their policy of insurance.

DAMIANI, J. P., RABIN and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Suffolk County, dated November 17, 1980 reversed, on the law, with $50 costs and disbursements, and it is declared that the plaintiffs have preserved the subrogation rights of their insurer and that they have not, therefore, waived any right which they may have had to recover additional first-party benefits under the "Additional Personal Injury Protection" indorsement of their policy of insurance.