■ In the Matter of ANTHONY CELONA, Respondent, v ROYAL GLOBE INSURANCE COMPANY, Respondent, and AETNA INSURANCE COMPANY, Appellant. — Appeal by Aetna Insurance Company from an order of the Supreme Court, Nassau County (Niehoff, J.), dated March 12, 1980, which denied its motion (1) to vacate an order of the same court, dated December 11, 1979 (Robbins, J.), entered upon its default, which (a) granted petitioner's application to modify an arbitrator's award so as to include interest and (b) as so modified, confirmed the award, and (2) to vacate the arbitrator's award dated November 5, 1979. Order affirmed, with one bill of $50 costs and disbursements. The facts are substantially not in dispute. On October 27, 1977, the infant claimant, then five years old, was struck by a motorcycle operated by Michael Odorisio while the infant was crossing Catherine Street in Valley Stream, New York. Catherine Street is a two-way street running generally in a north-south direction. A fuel oil truck, owned by Merrick Shell Fuel Oil Co., was illegally parked at the curb on the west side of the street in front of 45 Catherine Street. The truck was facing against the traffic, in a northerly, instead of southerly, direction. The engine of the truck was running as a power source for pumping fuel oil, allowing the driver to make a fuel delivery at 45 Catherine Street. The accident occurred during the course of the fuel delivery while the driver of the truck was at the rear of the house where the fuel intake source is located. At the time of the accident, Mrs. Fair (the infant claimant's escort), her four-year-old daughter, and the infant claimant were crossing Catherine Street from west to east, immediately north, or in front of, the fuel oil truck. The infant claimant was struck by a motorcycle being operated in the northbound lane. Thereafter, a claim for no-fault benefits on behalf of the infant was made against the respondent Royal Globe Insurance Co. (hereinafter Royal) under a policy issued to the infant's father covering his automobile, and against appellant Aetna Insurance Co. (hereinafter Aetna) under a policy issued to the owner of the fuel oil truck. Subsequently the claims proceeded to arbitration. After finding that the oil truck was "in use" within the context of section 672 (subd 1, par [a]) of the Insurance Law and that said "use" was a proximate cause of the accident, the arbitrator awarded the infant claimant $20,217.41 in medical expenses against appellant Aetna. Additionally, the arbitrator found Royal contingently liable to pay no-fault benefits, i.e., in the event Aetna was found not liable, Royal would be responsible for paying first-party benefits. A personal injury action was commenced by the infant claimant and his parents against, *inter alia,* the motorcycle operator, Bernadette Fair (the infant's escort) and Merrick Shell Fuel Oil Co. (Aetna's insured). Aetna settled the action as against its insured for $47,500. Apparently, the action against Mrs. Fair was settled for $60,000 and the action as against the motorcycle operator was settled for $10,000. Pursuant to a stipulation entered into between the plaintiffs and appellant, Aetna agreed to (1) honor an obligation to pay no-fault benefits to the infant claimant up to $50,000, notwithstanding any court determination to the contrary, (2) waive any appeal to this court on the issue of its obligation to pay the infant claimant no-fault benefits and (3) hold the infant claimant harmless in the event respondent Royal, in the future, acquires a lien for first-party benefits against the settlement proceeds recovered in the personal injury action, in accordance with subdivision 2 of section 673 of the Insurance Law. Initially we must address the issue as to whether the aforesaid stipulation has rendered this appeal moot. Respondent Royal contends that regardless of the outcome of this appeal, Aetna, under the terms of the stipulation, would have the ultimate financial liability for the payment of the no-fault benefits. Royal maintains that assuming, *arguendo,* this court reverses the order appealed from and vacates the arbitration award only in

respect to Aetna's obligation to pay no-fault benefits (the most favorable determination possible with respect to Aetna) Royal would (1) reimburse Aetna for the no-fault benefits paid in accordance with the arbitration award, (2) acquire a statutory lien pursuant to subdivision 2 of section 673 of the Insurance Law against the settlement proceeds paid to the infant claimant on behalf of Mrs. Fair, a noncovered person (see Insurance Law, § 671, subd 10) in the personal injury action, and (3) assert its lien. In turn, Aetna, under the terms of the stipulation, would be required to hold the infant claimant harmless and satisfy Royal's lien. We disagree and find this appeal, with respect to respondent Royal, has not been rendered academic or moot by the aforesaid stipulation. The flaw with Royal's argument is that its right to enforce a statutory lien, under subdivision 2 of section 673 of the Insurance Law, depends upon a resolution of the factual question of whether the settlement proceeds paid on behalf of a noncovered person in a personal injury action were for basic economic loss or noneconomic loss, a question to be determined in the first instance by the court in a future action to enforce the lien (see *United States Fid. & Guar. Co. v Stuyvesant Ins. Co.,* 61 AD2d 1122). Subdivision 2 of section 673 of the Insurance Law provides: "In any action by or on behalf of a covered person, against a noncovered person, where damages for personal injuries arising out of the use or operation of a motor vehicle or a motorcycle may be recovered, an insurer which paid or is liable for first party benefits on account of such injuries shall have a lien against any recovery to the extent of benefits paid or payable by it to the covered person." The purpose of the statutory lien is solely to prevent the possibility of a double recovery for basic economic loss by a covered person who has received first-party benefits (*Royal Globe Ins. Co. v Connolly,* 54 AD2d 1117). A claimant should not be forced to pay for his no-fault benefits out of his recovery for pain and suffering (see *Scinta v Kazmierczak,* 59 AD2d 313; *Royal Globe Ins. Co. v Connolly, supra*). Therefore, Royal would be entitled to impose a statutory lien only on the portion of the settlement proceeds paid on behalf of Mrs. Fair (a noncovered person) in the personal injury action which is attributable to the infant's claim for basic economic loss. A determination would have to be made by the court, in a future action to enforce the lien, as to what portion of the settlement, if any, reasonably represents basic economic loss for which the infant claimant has received first-party benefits, considering all of the circumstances including the intention of the parties in making the settlement agreement (see *United States Fid. & Guar. Co. v Stuyvesant Ins. Co., supra*). If, in such future action, the court holds that none of the settlement proceeds was for basic economic loss, Royal would not have a lien against the settlement proceeds which Aetna would be required to satisfy under the terms of the stipulation. Accordingly, this appeal is not moot because, assuming, *arguendo,* we reverse Special Term and grant the application to vacate the arbitration award only with respect to Aetna's obligation, Aetna would be entitled to reimbursement from Royal for the benefits it paid in accordance with the arbitration award and could conceivably end up with a net recovery, if, in a future action commenced by Royal to enforce a lien under subdivision 2 of section 673 of the Insurance Law, the court determines that none of the settlement proceeds, or an amount less than the arbitration award, was for basic economic loss. Turning to the merits, we concur with the arbitrator's finding that the oil truck was "in use" within the context of section 672 (subd 1, par [a]) of the Insurance Law. "An oil delivery truck has a particular use, namely, to deliver oil to a specified location. At the time of the accident, the truck was concededly being used for such purpose. Any on-going activity relating to the vehicle, which is in conformity with its normally intended purpose, should constitute a 'use' of

such vehicle sufficient to call forth the mandatory requirements of the subject statute" (*Yanis v Texaco, Inc.*, 85 Misc 2d 94, 96). Although the arbitrator erred in framing the proximate cause issue for purpose of no-fault as "whether the oil truck's use was a contributing factor, no matter how minimal, in the happening of the accident", said error does not automatically mandate reversal. The standard to be applied when reviewing a compulsory arbitration award which has been infected by error of law is "whether any rational basis whatsoever exists for the determination" (*Matter of Shand [Aetna Ins. Co.*], 74 AD2d 442, 443). The arbitrator's determination that the use of the oil truck was a proximate cause of the infant's injuries reads, in pertinent part: "Had the oil truck been properly stopped, an additional viewing distance for the escort and an additional viewing *and thereby stopping* distance for the motorcyclist would have been available; a distance of at least 20-22 feet * * * The testimony of the motorcyclist that the stopped position of the oil truck obscured his vision, without anything further, would be sufficient to support a finding that the oil truck was *a* (as opposed to *the* apparently urged by respondent) proximate cause for No-Fault purposes * * * However, additionally, the engine of the oil truck had been left running at the time of the accident. Even if this did not totally obscure the sound of the approaching motorcycle, it undoubtedly reduced or distorted substantially the warning effects of hearing the usually loud motorcycle sounds." We reject appellant's contention that no rational basis exists for concluding that a fuel truck parked facing in a northerly rather than a southerly direction causes a greater obstruction to a pedestrian's view while crossing in the middle of the block. It is conceded that the fuel oil truck was making a delivery to the residence located at 45 Catherine Street. To enable the fuel truck to make a delivery at this residence, the rear of the oil truck would have to be located at the driveway cut in the west curb of 45 Catherine Street in order to run the hose from the back of the truck to the intake valve at the rear of the residence. The police officer who investigated the scene of the accident testified that had the oil truck been lawfully parked, it would have to have been rotated 180 degrees on its rear axle. Therefore, the rear of the truck would have been a truck length away from the point where the infant claimant commenced to cross the street and the noise from the truck's engine would have been twice that distance from the infant claimant's point of departure. Accordingly, the arbitrator's finding that a lawfully parked truck would have provided an additional 20-22 feet of visibility for the infant's escort and the motorcycle operator (a conservative estimate) has a rational basis in the evidence. Neither do we find it unreasonable to have construed the escort's testimony in a manner consistent with the arbitrator's interpretation that the sound of the truck's engine undoubtedly reduced or distorted substantially the warning effects of hearing the usually loud motorcycle sounds, especially in light of one's everyday experience with the noise each vehicle produces. Furthermore, the fact that the infant's escort or the motorcyclist may not have acted prudently under the situation the oil truck created does not render the arbitrator's findings irrational, nor does it preclude the arbitrator from finding that the use of the oil truck was a proximate cause of the accident. We note that since Royal did not cross-appeal from the order, this court does not have jurisdiction to determine its contention that the arbitrator erred in finding it contingently liable to pay first-party benefits. Hopkins, J. P., Damiani, Titone and Mangano, JJ., concur.