AETNA CASUALTY AND SURETY COMPANY, Respondent, v
ISIDORE JACKOWE et al., Appellants, and GENERAL TIRE
& RUBBER CO., INC., Respondent.

Second Department, October 31, 1983

**APPEARANCES OF COUNSEL**

*Rosenbaum Wise Lerman Katz & Weiss (Arthur N. Seiff*
and *Elliot L. Katz* of counsel), for appellants.

*John P. D'Ambrosio, P. C.*, for Aetna Casualty & Surety
Company, respondent.

*A. Paul Goldblum* for General Tire & Rubber Co., Inc.,
respondent.

**OPINION OF THE COURT**

WEINSTEIN, J.

The instant appeals arise in the context of a no-fault
insurance claim by two injured parties and their spouses.
On December 30, 1976, defendants Isidore and Martin J.

Jackowe sustained personal injuries while operating and riding in a motor vehicle owned by Knolls Ambulance Service and insured by plaintiff, the Aetna Casualty and Surety Company (hereinafter Aetna). The accident allegedly resulted from the blowout of a tire manufactured by defendant General Tire & Rubber Co., Inc. (hereinafter General Tire). Aetna had insured Knolls Ambulance Service under a commercial automobile liability policy. The policy contained the standard New York no-fault indorsement covering so-called "basic economic loss" and contained an "ADDITIONAL PERSONAL INJURY PROTECTION" indorsement which required the insurer to pay first-party benefits for so-called "extended economic loss" sustained as a result of an accident. Under subdivision 2 of section 673 of the Insurance Law the insurer had a statutory lien to the extent of payments made to cover basic economic loss, and under the additional personal injury protection indorsement it was subrogated to the extent of payments made to cover extended economic loss.

As a consequence of the accident, Aetna paid the insured defendants a total of $107,899.14 in no-fault benefits pursuant to the terms of its policy. Thereafter, in or about June, 1977, Isidore and Martin J. Jackowe, together with their wives, commenced an action against General Tire. The injured parties sought damages for personal injuries, including hospital expenses, medical care, loss of employment earnings and pain and suffering, while their wives sought damages for loss of consortium. By letters dated April 16, 1979, to the respective attorneys for the Jackowes and General Tire, Aetna asserted liens on any settlement which might result between those parties as a result of the Jackowes' claim. Said liens assertedly arose from the payments for basic economic loss made by Aetna under the no-fault provisions of its policy with Knolls Ambulance Service. Aetna also asserted a right of subrogation to recover payments it had made for extended economic loss.

The Jackowes' case against General Tire went to trial in September, 1980 and was settled pursuant to stipulation on September 16, 1980. At that time, the attorneys for the Jackowes and General Tire entered into the following agreement in the Supreme Court, Bronx County, before

Justice SIDNEY H. ROSEN: "The Actions [*sic*] by Isidore Jackowe and his wife Elizabeth Jackowe against the Defendant, General Tire and Rubber Company, [is settled in the] total sum of $100,000, and the action of Martin Jackowe and his wife, Nancy Jackowe against said defendant, [is settled] for the sum of $100,000; that these settlements are subject to any and all liens which may exist, and they are subject to any claims which may attain the status of a lien, and I am particularly referring to the claim by Aetna Casualty and Surety Company for No-Fault Benefits paid by it to Isidore Jackowe and Martin Jackowe, which I have been advised is in the approximate amount of $105,000 as of the present time."

The sum of $106,000 was paid to the Jackowes' attorneys to be held in escrow by them in an interest-bearing account until such time as Aetna's claim to recover moneys which it already had paid to the Jackowes was finally judicially determined or until a release was obtained from Aetna in favor of General Tire and the Jackowes for whatever sum it paid in no-fault benefits.

Pursuant to the terms of the stipulation entered into on the record, two general releases, one subscribed by Isidore and Elizabeth Jackowe and the other subscribed by Martin J. and Nancy Jackowe, were executed. Each release purported to discharge General Tire from, *inter alia,* "all actions, causes of action, suits, debts * * * accounts * * * claims, and demands whatsoever, in law, admiralty or equity" in consideration of the payment of $100,000 to each couple.

Aetna thereupon instituted the present action seeking a declaration that it is entitled to recover the benefits which it paid to Isidore and Martin J. Jackowe from the proceeds of the settlement between General Tire and all four Jackowes. After the joinder of issue, Aetna moved for summary judgment on its behalf, while the Jackowes cross-moved for an order dismissing Aetna's complaint on the ground that Aetna failed to prove that any portion of the settlement proceeds was attributable to basic economic loss.

In a decision dated December 7, 1981, Aetna was granted summary judgment against defendants Jackowe and the

complaint, as it related to General Tire, was dismissed, based upon the following rationale (113 Misc 2d 243-244):

"The settlement record reflects the claim of defendants Jackowe that the settlement was for pain and suffering only and that, since no proof of economic loss in the nature of medical expenses or loss of earnings was offered on the trial, claims relating thereto were not included in the settlement. It was the position of General Tire & Rubber Co., Inc., that the complaint sought damages for economic loss as well as pain and suffering and, therefore, all claims made were included within the settlement agreement.

"Subdivision 2 of section 673 of the Insurance Law provides that in any action for personal injuries brought by a person covered by no-fault insurance against a noncovered person and arising out of the operation and use of a motor vehicle, the insurer which paid first-party benefits on account of such injuries 'shall have' a lien against any recovery to the extent of benefits paid to covered persons.

"Isidore and Martin J. Jackowe were covered persons under subdivision 2 of section 673 of the Insurance Law and General Tire and Rubber Co., Inc., was the noncovered party sued in an action for personal injuries, encompassing pain and suffering and economic loss, which arose out of the use or operation of a motor vehicle. Plaintiff herein is the insurer which paid first-party benefits for the personal injuries sustained in that accident by the covered persons.

"Subdivision 2 of section 671 of the Insurance Law defines first-party benefits as 'payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle'. Basic economic loss includes necessary expenses for medical and hospital services and loss of earnings (Insurance Law, § 671, subd 1, pars [a], [b]).

"It has been held that the term 'personal injuries' used in the settlement of an action involving the use and operation of a motor vehicle does not include basic economic loss in a case where the complaint seeks damages for pain and suffering only. Consequently, an insurer's lien for first-party benefits is not affected by the settlement (*Record v Royal Globe Ins. Co.,* 83 AD2d 154; *Government Employees Ins. Co. v Halfpenny,* 103 Misc 2d 128).

"However, in the settlement of an action for pain, suffering and personal injuries, the insurer which had paid first-party benefits had the right of subrogation in the sum received through settlement equal to the amount paid by the insurer (*Kozlowski v Briggs Leasing Corp.,* 96 Misc 2d 337).

"In the underlying tort action instituted by the Jackowes, an unlimited general release was given to General Tire & Rubber Co., Inc., and the complaint therein sought damages for pain, suffering and economic loss in the form of medical and hospital expenses and loss of earnings. Thus, the settlement of that action was within subdivision 2 of section 673 of the Insurance Law and plaintiff's lien attached to the settlement despite the contention to the contrary that the settlement did not include economic loss. The settlement disposed of the causes of action alleged in the complaint."

An order and judgment based thereon were subsequently entered accordingly.

On appeal defendants Jackowe maintain that summary judgment was improperly granted in the insurer's favor inasmuch as Aetna failed to sustain its burden of proving what portion, if any, of the moneys received by the Jackowes in the course of their settlement with General Tire represented payment by the tort-feasor for basic and extended economic loss. The insurer's statutory lien attaches only to that portion of the settlement proceeds which is attributable to the covered persons' claim for basic economic loss. As respects extended economic loss, Aetna is subrogated to the rights of the Jackowes against General Tire but it has no statutory lien on the settlement proceeds therefor. The matter for our determination is whether a question of fact exists as to how much of the settlement proceeds is allocable to basic and extended economic loss. We conclude that such a question exists and that a hearing as to the allocation of damages is necessary.

The law is well settled that a release is merely a species of contract and, as such, its construction is governed by the same principles of law applicable to other contracts (*Mangini v McClurg,* 24 NY2d 556, 562; *Record v Royal Globe Ins. Co.,* 83 AD2d 154, 158; 19 NY Jur 2d, Compromise,

Accord, and Release, § 76). With respect to these generic principles of interpretation, the Court of Appeals has held that: "These rules are based on a realistic recognition that releases contain standardized, even ritualistic, language and are given in circumstances where the parties are sometimes looking no further than the precise matter in dispute that is being settled. Thus, while it has been held that an unreformed general release will be given its full literal effect where it is directly or circumstantially evident that the purpose is to achieve a truly general settlement * * * the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form" (*Mangini v McClurg, supra,* p 562).

It is equally well settled that an insured who has sustained personal injury should not be required to pay for his no-fault benefits out of his recovery for pain and suffering (*Matter of Celona v Royal Globe Ins. Co.,* 85 AD2d 635, 636; *United States Fid. & Guar. Co. v Stuyvesant Ins. Co.,* 61 AD2d 1122, 1123; *Scinta v Kazmierczak,* 59 AD2d 313, 316). The initial inquiry thus becomes whether the settlement between the Jackowes and General Tire covered only the pain and suffering claim or whether it covered basic and extended economic loss as well.

In the instant situation, the transcript of the stipulation establishes that the Jackowes understood that General Tire was settling any and all claims arising out of the accident, that the settlement money was subject to any and all liens to which Aetna was entitled by virtue of its payment to Isidore and Martin J. Jackowe and that the Jackowes were to indemnify General Tire and hold it harmless from any claims made by Aetna for benefits paid. Although the Jackowes contended that the settlement was merely for pain and suffering sustained by the two injured parties, their complaint, in addition to stating claims for loss of services on behalf of Nancy and Elizabeth Jackowe, stated causes of action on behalf of Isidore and Martin J. Jackowe for pain, suffering and economic loss in the form of medical and hospital expenses and loss of earnings. The complaint specifically alleged that as a result of General Tire's negligence, Isidore Jackowe sustained "severe and

permanent personal injuries" and that he "was compelled to and did undergo extensive medical care and treatment for said injuries and did expend and will expend great sums of money for said medical care and treatment; was incapacitated from his normal employment as a result of the injuries sustained, and was otherwise incapacitated from his normal pursuits of life". Martin J. Jackowe likewise claimed to have sustained severe personal injuries "resulting in hospitalization and expenditure of certain monies for medical care and hospitalization, and was incapacitated from his usual duties".

Absent any patent ambiguity on the face of the releases or any evidence that the settlement of claims for basic and extended economic loss constituted an "uncontemplated transaction" (*Mangini v McClurg*, 24 NY2d 556, 562, *supra*), the releases are an integrated writing and the Jackowes may not attempt to create an ambiguity by alleging that it was their understanding that the stipulation of settlement and release related only to their causes of action to recover for pain and suffering. Inasmuch as the Jackowes have failed to prove that the settlement contemplated only their claim for pain and suffering, they were properly held to the plain and unambiguous terms of the releases.

Subdivision 2 of section 673 of the Insurance Law provides in relevant part that: "[i]n any action by or on behalf of a covered person, against a noncovered person, where damages for personal injuries arising out of the use or operation of a motor vehicle or a motorcycle may be recovered, an insurer which paid or is liable for first party benefits on account of such injuries shall have a lien against any recovery to the extent of benefits paid or payable by it to the covered person". The purpose underlying the statutory lien provision is clearly to prevent the possibility of a double recovery for basic economic loss by a covered person who has received first-party benefits (*Matter of Celona v Royal Globe Ins. Co.*, 85 AD2d 635, 636, *supra; Royal Globe Ins. Co. v Connolly*, 54 AD2d 1117, 1118). Isidore and Martin J. Jackowe represent "covered person[s]" who have received first-party benefits from Aetna within the statutory definitions (Insurance Law, § 671, subds 2, 10).

Aetna's complaint alleges that it paid to the two injured Jackowes $60,627.14 in statutory benefits for basic economic loss and $47,272 in benefits for extended economic loss pursuant to the policy's "ADDITIONAL PERSONAL INJURY PROTECTION" indorsement. Since the Jackowes failed to deny payments in those amounts, Aetna's allegations are deemed admitted (CPLR 3018, subd [a]).

The benefits paid by Aetna under the "ADDITIONAL PERSONAL INJURY PROTECTION" indorsement, although authorized by a regulation (11 NYCRR 65.3) promulgated by the Superintendent of Insurance and directed at providing additional no-fault type first-party benefits in the event of extended economic loss arising out of a covered accident, are not, technically speaking, part of the no-fault statute (Insurance Law, § 670 *et seq.; see Record v Royal Globe Ins. Co.,* 83 AD2d 154, 158, *supra*). Therefore, Aetna has a statutory lien only with respect to benefits paid pursuant to the statute.

While the purpose of the statutory scheme is to make an injured party whole, it is not designed to provide such party with a windfall. Subrogation is the principle which exists to prevent double recovery on the part of an insured and to compel the wrongdoer to bear the ultimate costs. If the insureds were permitted to retain the payment from Aetna under their additional indorsement, as well as the entire amount of the settlement with General Tire, they would obtain a double recovery. Inasmuch as there exists a possibility that the Jackowes could recover twice for their economic loss, Aetna is subrogated to the rights of the Jackowes against General Tire to the extent, as well, of the Jackowes' claim for extended economic loss (*Scinta v Kazmierczak,* 59 AD2d 313, 316-317, *supra*).

Although Aetna has no statutory lien on the funds in escrow for payments made pursuant to the "ADDITIONAL PERSONAL INJURY PROTECTION" indorsement, the court is not precluded from awarding Aetna part of the settlement funds in satisfaction of its right of subrogation. As noted in *Kozlowski v Briggs Leasing Corp.* (96 Misc 2d 337, 342): "Since this court sits as a court of equity and since subrogation is equitable in nature, not dependent on contract, this court will apply principles of equity in determining the

rights of the parties. 'The doctrine of subrogation is a device to promote justice. We shall never handle it unwisely if that purpose controls the effort, and the resultant equity is steadily kept in view.' (*Acer v Hotchkiss,* 97 NY 396, 402.) 'There is \* \* \* authority that subrogation remains basically equitable in character, and hence, *subrogation is to be accorded upon equitable principles even though the right thereto,* as authorized by statute in respect to policies of insurance, *is contractually declared.*' (16 Couch, Insurance [2d ed], § 61:20, p 252, emphasis added; see *Roberts v Fireman's Ins. Co.,* 376 Pa 99, 107, citing *Acer v Hotchkiss, supra.*)"

In *Kozlowski v Briggs Leasing Corp.* (*supra,* p 343), the petitioner was advanced $16,798.44 by the respondent insurer prior to his receipt of a settlement in the sum of $177,500. The trial court ruled as follows (p 343): "By ingeniously (and perhaps disingenuously) characterizing his settlement as compensation for 'pain and suffering' only, petitioner, by clever taxonomy, is attempting to eliminate GEICO's right of subrogation \* \* \* '[I]t is generally held that where the tortfeasor obtains a release from the insured with knowledge that the latter has already been indemnified by the insurer, such release of the tortfeasor *does not bar the subrogation of the insurer.*' \* \* \* While technically, here, petitioner tried to prevent the insurer's subrogation right from coming into existence, this is akin to, and should be governed by the same principles as, attempting to eliminate the insurer's right to subrogation. Aborting a right from coming into existence is, here, the functional equivalent of destroying an existing right. 'Equity regards substance rather than form' (*Pezenik v Greenberg,* 251 App Div 866, 867)."

Although it is clear that the Jackowes are bound by the terms of their general releases and that the proceeds of the settlement include payments for both basic and extended economic loss, we conclude that Special Term erred in awarding the entire escrow fund to Aetna. Under the circumstances, a hearing is required so that a determination might be made as to what portion of the settlement reasonably represents basic and extended economic loss sustained by Isidore and Martin J. Jackowe and what

portion thereof is allocable to their recovery for pain and suffering and the loss of services sustained by Elizabeth and Nancy Jackowe (see *Hyde v North Riv. Ins. Co.,* 92 AD2d 1001; *Matter of Celona v Royal Globe Ins. Co.,* 85 AD2d 635, 636, *supra; United States Fid. & Guar. Co. v Stuyvesant Ins. Co.,* 61 AD2d 1122, 1123, *supra).* *

Although there is no question that the Jackowes settled the claim for economic losses, it cannot be ascertained without the benefit of a further hearing, what portion of the settlement was intended to satisfy the basic and extended economic losses of Isidore and Martin Jackowe. Accordingly, summary judgment was improperly granted.

The appeal from the order entered December 17, 1981, which, *inter alia,* granted plaintiff's motion to strike the answer of the appellants, should be dismissed as the right of direct appeal from that order terminated with the entry of the judgment dated December 18, 1981 (see *Matter of Aho,* 39 NY2d 241, 248). The judgment dated December 18, 1981 should be reversed, so much of the order entered December 17, 1981 as granted plaintiff's motion for summary judgment striking the appellants' answer should be vacated, and the matter should be remitted to the Supreme Court, Westchester County, for a hearing in accordance herewith.

TITONE, J. P., GULOTTA and BRACKEN, JJ., concur.

Appeal from the order entered December 17, 1981 dismissed (see *Matter of Aho,* 39 NY2d 241, 248).

Judgment dated December 18, 1981 reversed, first decretal paragraph of the order entered December 17, 1981 vacated, and matter remitted to the Supreme Court, Westchester County, for a hearing in accordance herewith.

Appellants are awarded one bill of costs.

---

* While the case of *Aetna Ins. Co. v Springsteen* (78 AD2d 532) would appear to rule to the contrary, in fact it does not. In the first instance, the issue involved herein was treated only peripherally in *Aetna* (*supra*). Secondly, the sole recovery allowed in *Aetna* was for basic economic loss, there having been no recovery for pain and suffering. Accordingly, we find ourselves constrained herein not by *Aetna* but by the latter case of *Matter of Celona v Royal Globe Ins. Co.* (85 AD2d 635).