STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANIES, Appellant, v JAMES BROOKS, Respondent.

Fourth Department, January 23, 1981

**APPEARANCES OF COUNSEL**

*Bayer & Smith (Gary H. Abelson* of counsel), for appellant.

*Snyder & Snyder (Sherwood M. Snyder* of counsel), for respondent.

**OPINION OF THE COURT**

CARDAMONE, J.

The only issue on this appeal is whether a no-fault insurer can reduce first-party benefits when a claimant's employment is terminated for reasons other than the claimant's disability. Such reduction is authorized in the regulations (11 NYCRR 65.6 [n][2][vi]) promulgated by the Superintendent of Insurance under article 18 of the Insur-

ance Law. In deciding a motion for summary judgment in favor of claimant (101 Misc 2d 704) Special Term determined that such a reduction in benefits was not contemplated by the Legislature when it enacted the New York Comprehensive Automobile Insurance Reparations Act (No-Fault Law) (Insurance Law, art 18). In so holding, Special Term abrogated section 11 NYCRR 65.6 (n) (2) (vi). We find that this regulation is a valid interpretation of the Insurance Law and reverse the order at Special Term.

On August 24, 1976 claimant James Brooks was injured while riding in an automobile insured by appellant State Farm Mutual Automobile Insurance Companies (State Farm). In accordance with the provisions of the No-Fault Law appellant paid respondent first-party benefits. Since claimant was disabled in the accident, appellant made periodic payments to him as compensation for his loss of earnings. These payments were made at the rate of $145.52 per week, or 80% of his previous wage as a laborer employed by the City of Rochester. In September, claimant was informed by his employer that he would be laid off effective October 3, 1976. The layoff was caused by lack of work for laborers and did not result from Brooks' disability. Claimant applied for unemployment benefits, but his application was denied because he was unable to work due to the broken arm he had received in the auto accident. It was not until April, 1977 that appellant learned that Brooks had been officially laid off. When so informed, appellant commenced the instant action against claimant seeking to recover what it alleges to be overpayments tendered by mistake. State Farm's theory of recovery is that its duty to pay first-party benefits in the amount of 80% of lost earnings ceased as of the date Brooks was laid off. It claims that from October 3, 1976 to April 11, 1977 it owed claimant no more than what he would have collected as unemployment insurance, i.e., $91 per week. Claimant Brooks contends that such a reduction is not authorized by the No-Fault Law and that such an interpretation of the statute under the regulation is contrary to the legislative intent.

In 11 NYCRR 65.6 the Superintendent of Insurance has provided rules for the settlement of claims for personal in-

juries. In paragraph (2) of subdivision (n) guidance has been furnished for determining loss of earnings from work. This regulation provides generally that benefits from collateral sources are not a deduction; that demonstrated future earnings may be considered; that earnings from seasonal work may be considered; that an unemployed claimant is entitled to receive payments equal to the unemployment benefit he would have received had he not been disabled. Clause (v) states that if "the applicant, while disabled, is discharged from employment solely because of inability to work due to the injury, benefits for basic economic loss shall continue at the same level while the disability continues". Clause (vi) applies directly to this case and provides as follows: "If an applicant, while disabled, is discharged from employment, benefits shall cease if the position would have been lost had the accident not occurred (e.g., plant shutdown, strikes, etc.). However, the insurer shall reimburse the applicant for benefits lost which would have been received had he not been disabled (e.g., union strike benefits, unemployment, etc.)."

This regulation was promulgated in accordance with the power vested by law (Insurance Law, § 21) in the Superintendent of Insurance to interpret the provision of the Insurance Law. The Superintendent's power "to interpret, clarify, and implement the legislative policy" is broad *(Breen v Cunard Lines S.S. Co.,* 33 NY2d 508, 511) and, unless inconsistent with a specific statutory provision, regulations issued by the Superintendent are valid exercises of his power *(Ostrer v Schenck,* 41 NY2d 782, 785-786). Judicial review of a regulation is limited and where it is not irrational or unreasonable the regulation must be upheld *(Ostrer v Schenck, supra,* p 786; *Matter of Howard v Wyman,* 28 NY2d 434).

The No-Fault Law was enacted primarily to assure "that every auto accident victim will be compensated for substantially all of his economic loss, promptly and without regard to fault" (Governor's Memorandum, NY Legis Ann, 1973, p 298; Comment, New York Adopts No-Fault: A Summary and Analysis, 37 Albany L Rev 662, 671). According to the legislative scheme an injured individual "is entitled to

actual lost earnings claimed less 20%, unless such reduced figure exceeds $1,000 per month" *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 456-457). As the Court of Appeals noted, it is not the purpose of this legislation to provide a windfall for either the injured person or the insurance carrier. Instead, the intention is "to compensate the accident victim for the earnings he or she would have, *in fact,* realized, while, at the same time, ensuring that an unjustified financial burden is not thrust upon the insurance companies which would eventually be reflected in higher insurance premiums" *(Kurcsics v Merchants Mut. Ins. Co., supra,* p 457; emphasis added).

■ The No-Fault Law provides that a claimant be compensated for "loss of earnings from work which the injured person would have performed had he not been injured" (Insurance Law, § 671, subd 1, par [b]; § 672). The regulations of the Insurance Department provide that "loss of earnings from work" shall be determined by adjusting the actual earnings at the time of the accident to account for certain variables such as seasonal employment, demonstrated future earnings and discharge from employment. The regulations are a rational interpretation of the statutory requirement that an injured party be reimbursed for wages he would have earned had he not been injured. Under the regulations, the amount of earnings a person was receiving at the time of an accident is to be modified to reflect the actual situation. Both upward and downward modifications are allowed. The legislative intent is to determine as accurately as possible the claimant's actual loss. Although an award may be reduced because of a layoff or strike (11 NYCRR 65.6 [n][2][vi]), a claimant is not foreclosed from showing that he would not have participated in the strike (see 2 NY No-Fault Arb Rep, NF-287, No. 6, June, 1978) or that he would have obtained other employment (see 2 NY No-Fault Arb Rep, NF-277, No. 5, May, 1978).

Since the challenged regulation is a rational and reasonable interpretation of the statute it must be upheld. Claimant lost his employment while disabled and this would have happened even had the accident not occurred. Summary judgment is not appropriate for appellant State Farm,

however, as claimant may be able to prove that he would have obtained other employment.

The judgment should be reversed and the motion for summary judgment should be denied.

SIMONS, J. (concurring). I concur in the result but I believe that Special Term correctly held that section 11 NYCRR 65.6(n)(2)(vi) is invalid. The court apparently construes the regulation as establishing unemployment compensation as a minimum level below which defendant's benefits may not be reduced. The parties do not advance any such interpretation, however, and I do not think that such construction is reasonable. In clear terms the regulation establishes unemployment compensation as the maximum payment an injured claimant may receive if he loses his job by layoff during the period of his disability. In doing so it conflicts with the statutory definition providing that basic economic loss includes "loss of earnings from work which the injured party would have performed" but for his injury (see Insurance Law, § 671, subd 1, par [b]). Clearly the statute permits a claimant to prove, as the majority opinion recognizes, that he could have earned more than the amount of his unemployment insurance benefits if he had not been injured, and the regulation is invalid because it fails to so provide.

HANCOCK, JR., SCHNEPP and DOERR, JJ., concur with CARDAMONE, J. P.; SIMONS, J., concurs in result only in a separate opinion.

Order and judgment reversed, with costs, and motion denied.