OPINION OF THE COURT
Lester Sacks, J.
The sole issue in this matter is whether plaintiff is entitled to loss of earnings payments from defendant pursuant to section 671 (subd 1, par [b]) of the Insurance Law until the period of his disability ceases, or he actually resumes employment following his disability.
The plaintiff was injured in August, 1978 in an automobile accident. A short time prior thereto he had graduated from Queens College. At the time of the accident and for approximately four weeks prior thereto, he had been employed by a taxi firm. The accident had no connection with his employment.
He was incapacitated until January 6, 1979 when his doctor certified he could return to work. Until January 6, 1979 the no-fault insurance carrier paid him $28.69 per day as no-fault benefit. Upon being declared “fit to work” the company discontinued payments.
The plaintiff sought to return to work for his former employer but his job had been filled during his incapacity.
From January 6, 1979 to April 9, 1979, the plaintiff made diligent efforts to obtain employment through employment agencies and replies to ads in various newspapers. He obtained several interviews but was not actually employed until April 9, 1979.
*147 The plaintiff, not having complied with the employment requirements of section 527 of the Labor Law, was not entitled to unemployment insurance. The accident, having no connection with his employment, he was not entitled to workers’ compensation.
The no-fault law (Comprehensive Automobile Insurance Reparations Act, Insurance Law, § 670, et seq.) was enacted primarily to assure “that every auto accident victim will be compensated for substantially all of his economic loss, promptly and without regard to fault”. (NY Legis Ann, 1973, p 298; New York Adopts No-Fault: A Summary and Analysis, 37 Albany L Rev 662, 671.)
In furtherance of that goal, the Legislature enacted section 671 of the Insurance Law, which provides for payments by insurers of certain expenses to covered persons without regard to the fault of such persons. Paragraph (b) of subdivision 1 includes reimbursement for “loss of earnings from work which the insured person would have performed had he not been injured” (emphasis added).
The Superintendent of Insurance has provided rules for settlement of claims involving loss of earnings from work. 11 NYCRR 65.6 (n) (2) (v) states that if “the applicant, while disabled, is discharged from employment solely because of inability to work due to the injury, benefits for basic economic loss shall continue at the same level while disability continues.” Clause (vi) of that paragraph provides that if “an applicant, while disabled, is discharged from employment, benefits shall cease if the position would have been lost had the accident not occurred (e.g., plant shutdown, strikes, etc.).”
Under these regulations, the amount of earnings a person was receiving at the time of an accident is to be modified to reflect the actual situation. Both upward and downward modifications are allowed. The legislative intent is to determine as accurately as possible the claimant’s actual loss. (State Farm Mut. Auto. Ins. Cos. v Brooks, 78 AD2d 456.)
It would appear that the Superintendent of Insurance’s regulation quoted above, in clause (v), conflicts with the statute where a covered person’s disability ceases, but has *148 lost his employment due to previously existing injury sustained as a result of an accident. The wording of the statute clearly shows an intent to provide payments for loss of earnings from his old position he “would have performed had he not been injured”. (Insurance Law, § 671, subd 1, par [b].) Plaintiff herein would have had earnings from his old position until he was re-employed but for the accident in which he was involved.
On the other hand, the insurance regulation would terminate such benefits upon termination of the disability. If the disability ceases at a time after plaintiff has lost his job due to his injury but before he has had an opportunity to obtain other employment, he is placed in an untenable position if the regulations are strictly complied with. Where the regulations run counter to the clear wording of the statutory provision it should not be accorded any weight (see Matter of Adams [Government Employees Ins. Co.], 52 AD2d 118,121), and the court should not read into section 671 (subd 1, par [b]) any limitation for which no sound rationale can be found and which would render it useless. (Lederer v Wise Shoe Co., 276 NY 459, 465.)
In State Farm Mut. Auto. Ins. Cos. v Brooks (supra), an insured was furloughed from his position due to lack of work during the time he was recuperating from the injuries sustained as a result of an automobile accident. He was denied unemployment insurance because of his inability to work. Plaintiff insurer sought to reduce the insured’s benefits to the amount he would have received as unemployment benefits.
The court in that case also considered whether 11 NYCRR 65.6 (n) (2) (vi) was a valid interpretation of the statute and found that its purpose is to compensate an accident victim for the earnings he or she would have in fact, realized. (State Farm Mut. Auto. Ins. Cos. v Brooks, supra, p 459.) The court also noted that the legislative intent is to determine as accurately as possible the claimant’s actual loss. Under the tort system the defendant herein would have had the opportunity to prove the full value of all lost earnings, undiminished by wages lost by reason of the disability. (Welty v Brown, 57 AD2d 1000; see, also, 7A Warren’s Negligence, §§ 5.01, 5.02.)
*149 This issue has also arisen in the context of arbitration hearings before the American Arbitration Association. The loss of earnings provision of the Insurance Law has been held to mean that the insurer must pay loss of earnings benefits during the period of unemployment where claimant lost his position due to his injury, provided there is a good-faith effort to obtain other employment (Desiderio v Nationwide Ins. Co., NF-202 [1978]; Abadía v New York Tel. Co., NF-908 [1981]; Schondorf v Insurance Co. of North Amer., NF-217 [1978]) or, in addition, took steps to secure his old position (Rice v Merchants Mut. Ins. Group, NF-798 [1981]; Rocco v Hartford Acc. & Ind. Co., NF-745 [1980]). In all of the situations cited above, it was clear that each claimant would have continued to work at their respective positions but for their involvement in an accident.
The statutory scheme in section 671 (subd 1, par [b]) of the Insurance Law to provide certain benefits in situations such as this is clear; the defendant is to provide loss of earnings payments to one who has lost his position through no fault of his own until he regains employment. “The statute should be employed as a sword to gain immediate benefits for the injured, not as a shield to minimize an insurer’s potential damages.” (Yanis v Texaco, Inc., 85 Misc 2d 94, 97.)
Since the intent of the statute clearly indicates an attempt to compensate persons such as the plaintiff for the lost earnings they would have had but for their injury, the “basic economic loss” payable under this section must continue until the injured person is gainfully employed again. The purpose of this legislation is not to provide a windfall for either the injured person or the insurance carrier. (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 457.) Certainly payments to the plaintiff for his economic loss cannot be considered a windfall for him where he is discharged from his employment as a direct result of his injury.
Accordingly, judgment is directed in plaintiff’s favor in the amount of $2,008.30 plus interest, costs and disbursements. The plaintiff shall further recover from the defendant the sum of $1,000 as and for attorney’s fees pursuant *150 to section 675 of the Insurance Law and shall have judgment therefor.