OPINION OF THE COURT
William H. Bristol, J.
By notice of motion dated August 12, 1982, the defendant asks this court to dismiss plaintiff’s action pursuant to CPLR 3211 (subd [a], par 7). The question presented requires the court to construe the meaning of the term “basic economic loss” as it is used in the New York’s No-Fault Law, viz., section 671 of the Insurance Law (New York Comprehensive Automobile Insurance Reparations Act, Insurance Law, art 18, as added by L 1973, ch 13, in full effect Feb. 1, 1974 [hereinafter referred to as No-Fault]). Since the court has become aware of only one published decision on point, a detailed treatment of the issue is required.
This action arises out of a motor vehicle accident in Rochester, New York, on July 16,1981. Both of the drivers involved were “covered persons”. (See Insurance Law, § 671, subd 10.) Plaintiff claims that defendant’s negligence was the proximate cause of the accident which although thankfully not causing plaintiff to suffer a serious injury, *642 did result in the plaintiff suffering a serious loss of earnings in the amount of $4,699.84 from July 17,1981 through August 23, 1981, a period of five weeks.* Put in monthly terms, plaintiff appears to claim lost earnings for a one-month period (four weeks) in the amount of $3,949.87. Since the maximum amount of money plaintiff may receive as first-party benefits for lost earnings is $1,000 (see Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451), plaintiff sues to recover the difference between what he would have earned in one month and what he received as first-party benefits.
Plaintiff claims that lost earnings which exceed $1,000 per month are not part and parcel of “basic economic loss” and, therefore, that plaintiff may bring an action in tort to recover them.
Defendant argues that plaintiff’s claim is nothing more than “basic economic loss” as that term is defined by subdivision 1 of section 671 of the Insurance Law because plaintiff’s aggregate loss for medical bills, lost earnings and miscellaneous expenses (Insurance Law, § 671, subd 1, pars [a], [c]) does not exceed $50,000. Therefore the defendant claims that section 673 of the Insurance Law has statutorily abrogated the common-law right of action to sue in tort for the recovery of these lost earnings.
The question thus presented is whether the No-Fault Law has abrogated a “covered person’s” common-law cause of action sounding in negligence against another “covered person” for lost wages which exceed $1,000 per month where the plaintiff has not suffered an aggregate loss in excess of $50,000 for medical expenses, lost wages and statutorily accepted miscellaneous expenses.
New York’s No-Fault Law “provides a plan for compensating victims of automobile accidents without regard to fault. In essence, it is a two-pronged, partial modification of the pre-existing system of reparation for personal injuries suffered in automobile accidents under which system liability was grounded in negligence under classic principles of tort law. One prong deals with compensation; the *643 other with limitation of tort actions.” (Montgomery v Daniels, 38 NY2d 41, 46.) Unlike no-fault plans that completely abolish the tort system of recovery and allow no tort causes of actions under any circumstances (“pure” no-fault plans), New York’s No-Fault Law complements and supplements the tort reparations common law as it existed when the bill was enacted into law. (See, generally, 37 Alb L Rev 662, at pp 668, 670.)
The policy underlying this act was based on “unusually extensive study and investigation and on what must be accepted for the purposes of judicial review as an uncommonly sturdy legislative basis” (Montgomery v Daniels, supra, at p 52). Although not statutorily explicitly stated, the No-Fault statute appears to be aimed at prompt compensation for victims of motor vehicle accidents for “substantially all of their economic loss” without regard to fault. (See 37 Alb L Rev, at pp 670-671.) And, additionally, it was hoped that the act would help to reduce case loads by eliminating minor claims in terms of the dollar amounts which nevertheless took up significant court time and to reduce insurance premiums. “[I]t is not the purpose of this legislation to provide a windfall for either the injured person or the insurance carrier. Instead, the intention is ‘to compensate the accident victim for earnings he or she would have, in fact, realized, while, at the same time, ensuring that an unjustified financial burden is not thrust upon the insurance companies which would eventually be reflected in higher insurance premiums’ (Kurcsics v Merchants Mut. Ins. Co., supra, p 457; emphasis added).” (State Farm Mut. Auto. Ins. Cos. v Brooks, 78 AD2d 456, 459.)
In analyzing the “black letters” of the No-Fault statute, in light of its legislative policy underpinnings, the court is mindful of its obligation to strictly construe this statute. As Justice Niehoff has stated: “[T]he ‘no-fault’ law is in derogation of the common law and it is a firmly established principle of law that statutes in derogation of the common law are to be strictly construed and the common law is never abrogated by implication. In short, the common law must be held to be no further abrogated than the clear import of the language used in the statute absolutely requires. (See McKinney’s Cons Laws of NY, Book 1, *644 Statutes, § 301).” (Scarpelli v Marshall, 92 Misc 2d 244, 247.)
And, further, as pointed out by Justice Larkin of the Third Department: “ ‘The Legislature is not lightly to be charged with enacting a statute which will operate harshly or unjustly; and, if a statute apparently has such effect, some other construction is to be sought if possible’ (McKinney’s Cons Laws of NY, Statutes, § 146).” (Matter of Granger v Urda, 54 AD2d 377, 380.)
An examination of the statute reveals its relevant contents as follows:
“§ 672. Entitlement to first party benefits; additional financial security required.
“1. Every owner’s policy of liability insurance issued on a motor vehicle in satisfaction of the requirements of articles six or eight of the vehicle and traffic law shall also provide for * * * the payment of first party benefits”.
“§ 671. Definitions.
“1. ‘Basic economic loss’ means, up to fifty thousand dollars per person:
“(a) all necessary expenses incurred for: (i) medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii) psychiatric, physical and occupational therapy and rehabilitation; (iii) any non-medical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of this state; and, (iv) any other professional health services; all without limitation as to time, provided that within one year after the date of the accident causing the injury it is ascertainable that further expenses may be incurred as a result of the injury;
“(b) loss of earnings from work which the injured person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income, up to one thousand dollars per month for not more than three years from the date of the accident causing the injury; and
*645 “(c) all other reasonable and necessary expenses incurred, up to twenty-five dollars per day for not more than one year from the date of the accident causing the injury. * * *
“2. ‘First party benefits’ means payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle.”
“§ 673. Causes of action for personal injury.
“1. Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss. The owner, operator or occupant of a motorcycle which has in effect the financial security required by article six or eight of the vehicle and traffic law, or which is referred to in subdivision two of section three hundred twenty-one of such law, shall not be subject to an action by or on behalf of a covered person for recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss.” (Emphasis supplied.)
Thus the plain language of the statute clearly defines the duty to compensate via first-party benefits which the Legislature imposed on insurance carriers. It is less clear in its delineation of the second prong of the law, viz., the limitation of tort actions.
Upholding the constitutionality of the entire act, the New York State Court of Appeals reviewed the above sections and offered its advice that: “Thus, an injured party may bring a third-party tort action and may recover therein for economic loss over $50,000, for treatment expenses not ascertainable within one year of injury, for lost earnings which exceed $1,000 per month or continue beyond three years, and for other reasonable and necessary expenses which exceed $25 per day or continue after one year.” (Montgomery v Daniels, 38 NY2d 41, 47-48, supra; emphasis supplied.)
And, there is now no question but that the maximum amount a covered person can expect to be compensated for *646 basic economic loss by his own carrier is an aggregate of $50,000 and only $1,000 per month for lost earnings: “ ‘[I]t is abundantly clear that this provision [Insurance Law, § 671, subd 1, par (b)] contemplates recovery for loss of earnings up to $1,000 per month” (Kurcsics v Merchants Mut. Ins. Co., supra, at p 458).
Judge Jasen in Kurcsics then went on to hold that (49 NY2d, p 458): “The $1,000 per month limitation embodied in section 671 (subd 1, par [b]) is not part and parcel of the definition of lost earnings, but, merely, represents the outer limit of recovery set down by the Legislature in the no-fault automobile insurance scheme.” (Emphasis supplied.)
It is important to recall that dollar compensation limits are consistent with one of the goals of No-Fault, viz., to reduce insurance premiums by placing limits on what a policyholder could expect to recover from his own carrier thus giving the carrier certainty and predictability so as to set rates accordingly. (See, e.g., Governor Rockefeller’s memo dated Feb. 13, 1971 approving the bill and documents contained in the bill jacket.) This court has undertaken extensive search of the legislative history and can find nothing which would yield the conclusion that in dealing with the compensation prong of the legislative scheme the placing of limits on the amounts recoverable from one’s own insurance carrier was intended to take away a person’s common-law cause of action to sue for lost earnings that are not recoverable under the no-fault plan from his own carrier. Thus, this court’s holding agrees with the dicta in Montgomery (supra) that a covered person may bring an action to recover his lost wages to the extent that they exceed the $1,000 per month.
However, the learned Judge in Barnhart v Branch Motor Lines (107 Misc 2d 47) held that unless a covered person had an aggregate basic economic loss in excess of $50,000 he or she could not sue to recover his or her lost earnings which exceeded $1,000 per month. This court’s review of the legislative history of the No-Fault statute, the policies underlying its enactment, and its dictum construction by the Court of Appeals in Montgomery v Daniels (supra), leads it to respectfully disagree with the conclusion *647 reached in Barnhart. For the result of an interpretation of the statute consistent with Barnhart flies in the face of the language of the statute and abrogates a common-law right by implication. In so doing, it has an extremely harsh effect which this court does not deem to be consistent with the intent of the Legislature. The sad effect of the rationale of Barnhart is that those who for either lack of foresight and/or money do not buy extra insurance (Additional Personal Injury Protection) (see 11 NYCRR 65.13) but who make more than basic wages, i.e., in excess of $1,000 a month, are left without remedy or relief.
And clearly this was not the intent of the Legislature in enacting No-Fault. Rather the act sought an immediate compensation so as to save accident victims from becoming destitute as a result of lost earnings and medical expenses. It is clear from reading the act as well as reviewing its legislative history that citizens of this State retain their common-law right to sue for serious loss of earnings (those in excess of $1,000 per month).
Justice Denman of the Fourth Department, Appellate Division, has written: “The purpose of the [No-Fault] statutory scheme is to make whole an injured party, not to provide him with a windfall.” (Scinta v Kazmierczak, 59 AD2d 313, 316.)
To this the court would add that No-Fault was not designed to provide a windfall for insurance companies by taking away a common-law right of an injured party and putting in its place forced insurance premiums for extra coverage to protect against the effect of another’s negligence. As the court said in Yanis v Texaco, Inc. (85 Misc 2d 94, 97): “The statute should be employed as a sword to gain immediate benefits for the injured, not as a shield to minimize the insurer’s potential damages”.
Admittedly the continued existence of the common-law right to bring an action for lost earnings outside the scope of “basic economic loss” may mean that some relatively small lawsuits can be brought. But, No-Fault was a compromise act and had as one goal the reduction, not the elimination, of tort actions. And, the existence and availability of extra insurance coverage gives those with foresight and economic resources an alternative to litigation.
*648 Thus, strictly constructing the structure of New York’s No-Fault Law, both its foundation of public policy considerations and its framework of plain language, compels this court to conclude that lost earnings in excess of $1,000 per month are not within the definition of “basic economic loss” as that term is defined by section 671 of the Insurance Law for limitation of action purposes. Therefore, a “covered person’s” common-law right to bring an action in tort against another “covered person” to recover these sums is not abrogated by section 673 of the Insurance Law. Accordingly, this court holds that plaintiff’s complaint states a cause of action and denies defendant’s motion to dismiss.

 Although plaintiff’s complaint seeks $4,699.84 in lost earnings, his bill of particulars alleges $4,899.84. The difference appears to be either a mathematical or typographical error and in any event is irrelevant to the issue presented.