OPINION OF THE COURT
Arthur D. Spatt, J.
By complaint dated March 5, 1982, pursuant to the provisions of CPLR 901 et seq. (class actions), plaintiff commenced the instant action. Plaintiff sues on his own behalf and on behalf of a purported class of persons similarly situated. He seeks relief against the named defendant insurance carriers in their individual capacity and in a capacity representative of a purported class of insurance carriers (foreign and/or domestic) authorized and licensed in New York to issue automobile accident insurance policies subject to section 670 et seq. of article 18 of the *753 Insurance Law, namely, the “Comprehensive Automobile Insurance Reparations Act” (No-Fault Law).
It appears that answers have not been interposed, nor has plaintiff moved, pursuant to CPLR 902, for an order to determine whether this action may indeed be maintained as a class action.
Instead, defendants Country-Wide Insurance Co., Lumbermen’s Mutual Casualty Co. and all those defendants represented by the firm of Cahill, Gordon & Reindel, as specified in attachment A to their notice of motion, move and cross-move this court for an order, pursuant to CPLR 3211 (subd [a], par 7), dismissing the complaint for failure to state a cause of action. Defendant Safeco Insurance Co. (Safeco) further moves this court for an order, pursuant to CPLR 907 and 1012, for leave to intervene and for summary judgment.*
THE ISSUE
This action concerns itself solely with the statutory construction to be accorded section 671 (subd 1, par [b]; subd 2, par [b]) of the Insurance Law. At paragraph 11, the complaint alleges, in pertinent part, as follows: “The named defendants [alleged no-fault carriers] and all members of the defendant class described have, since December 1, 1977, received claims for lost earnings [Insurance Law, § 671, subd 1, par (b)] by persons [eligible injured insureds] who earned in excess of $1,250.00 per month and who have received disability benefits under 'Article 9 of the New York Worker’s Compensation Law [Insurance Law, § 671, subd 2, par (b)] and each has processed and paid said claims by offsetting the amounts received as disability benefits from the sum of $1,000.00 instead of from the claimant’s actual loss of earnings less the 20% offset.”
The dispute narrows to one complex point: are the statutory setoffs (representing specified collateral sources of recovery) as enumerated in section 671 (subd 2, par [b]) of the Insurance Law to be deducted by the no-fault carriers from the wage loss “outer limit” as set forth in section 671 (subd 1, par [b]) — that is, $1,000 — or are such setoffs to be deducted from the “gross” or “actual” wage loss of the *754 injured insured, so that the no-fault insurer remains liable, notwithstanding recovery from such collateral sources for a maximum payment of $1,000?
THE FACTS
The facts are not in dispute. Plaintiff Abraham D. Heitner was injured in an accident arising out of the use or operation of a motor vehicle. The vehicle was insured under the No-Fault Law by defendant Government Employees Insurance Company (Geico). Plaintiff was eligible to recover for lost earnings (Insurance Law, § 671, subd 1, par [b]) and medical expenses (Insurance Law, § 671, subd 1, par [a]) under the No-Fault Law and, in addition, was eligible for disability benefits pursuant to article 9 of the Workers’ Compensation Law.
To date, defendant Geico has reimbursed plaintiff under his no-fault coverage for his medical expenses plus his wage loss of up to $1,000 per month less the amount of disability benefits received by plaintiff by virtue of article 9 of the Workers’ Compensation Law. Specifically, Geico has paid plaintiff the sum of $582 per month. Defendant Geico states that it arrived at this amount by deducting the sum of $418 per month representing New York State disability benefits, which plaintiff is entitled to receive, from the $1,000 maximum for wage loss pursuant to section 671 (subd 2, par [b]) of the Insurance Law.
In addition to the instant action, plaintiff Heitner has commenced a plenary action against one Sherrod D. Edwards, the alleged tort-feasor, seeking to recover damages for “noneconomic loss” and for economic loss greater than the “basic economic loss”.
CONTENTIONS
The arguments of the parties, as expressed in their carefully drawn memoranda, may be summarized in the following manner.
Defendants assert that the Legislature, in enacting the No-Fault Law, distinguished between types of losses covered by no-fault (termed “basic economic loss”) and the extent to which such losses would be reimbursed by the no-fault carrier (termed “first-party benefits”). The Legisla *755 ture further provided, contend defendants, that, to the extent that actual economic loss exceeded “basic economic loss” (which has a “cap” of $50,000), the injured insured, or Heitner, could seek recovery by plenary tort action. (Insurance Law, § 673, subd 1.)
Defendants assert that, pursuant to the terms of section 671 (subd 2, par [b]), and by virtue of the 1977 amendment of section 205 of the Workers’ Compensation Law (deleting subd 10 thereof), an injured insured may seek recovery for “basic economic loss” from a variety of collateral sources, including the State disability program.
Defendants contend that in calculating their liability, that is, in calculating “first-party benefits”, it is necessary to deduct from “basic economic loss” sums which are received by the injured insured from the above-noted collateral sources.
In this regard, defendants contend that in no event may the sums recovered from collateral sources be deducted from any economic loss greater than the maximum “basic economic loss”, the sum of $1,000. Defendants support this argument with the contention that the Legislature, in drafting section 671 (subd 1, par [b]; subd 2, par [b]), intended to co-ordinate the recovery under no-fault with recovery for the same loss under other benefit programs. This was done, assert defendants, to reduce the burden oh the no-fault carrier, to reduce automobile liability insurance premiums and to prevent “double” recoveries. Simply put, defendants contend that the Legislature envisioned a maximum $1,000 per month “wage loss” recovery under no-fault; and, in calculating such recovery, the Legislature intended the no-fault carrier to be a secondary source paying the difference in “wage loss” between what was received from the other collateral source and $1,000 per month. That this was the Legislature’s intent, assert defendants, is evinced not only by the clear language employed, but also by the need to effectuate the concept of “basic economic loss” as a sum with a fixed limit so as to have such term act as a “floor” or threshold to activate the right to a tort claim (see Insurance Law, § 673, subd 1).
Finally, in support of the contention that they properly calculated plaintiff’s “first-party benefits” by subtracting *756 his disability benefits from the $1,000 limit or wage loss, defendants point to the 17th amendment to Insurance Department Regulation No. 68 (11 NYCRR 65.15 [n] [2]), wherein the Superintendent of Insurance indorses such manner of calculating “first-party benefits”.
Plaintiff vehemently disagrees with defendants’ analysis and asserts that the Superintendent of Insurance’s regulation, insofar as it supports defendants’ claim, is erroneous.
Plaintiff contends that his gross loss of income resulting from his injury exceeds the sum of $1,766 per month. He asserts that the amounts received by him as disability benefits are to be applied against this “gross loss” reduced by 20% (see Insurance Law, § 671, subd 2, par [a]), and not to the sum of $1,000. He contends that the $1,000 ceiling as set forth in section 671 (subd 1, par [b]) is the maximum a claimant may receive as no-fault wage loss benefits, rather than as benefits received from all sources. He contends that the $1,000 figure represents a legislatively fixed “floor” of benefits which an injured party may recover — and was not intended to preclude supplemental recovery from other sources. In this regard, plaintiff relies upon the holding in Kurcsics v Merchants Mut. Ins. Co. (49 NY2d 451). As with the 20% deduction per section 671 (subd 2, par [a]) addressed in Kurcsics, plaintiff herein contends that those statutory deductions set forth in section 671 (subd 2, par [a]) are to be deductions from “gross wage loss” and were not intended to reduce the no-fault carrier’s maximum $1,000 per month wage loss liability.
THE STATUTE
The New York Comprehensive Automobile Insurance Reparations Act (Insurance Law, §§ 670-678), effective February 1, 1974, as amended by chapter 892 of the Laws of 1977, provides that any “covered person” injured in an automobile accident within the State of New York will be reimbursed for his or her “basic economic loss” regardless of fault. Crucial to the implementation of the statute are the definitions therein contained of “basic economic loss” and “first-party benefits”.
Section 671 (subd 1, par [b]) of the Insurance Law defines “basic economic loss”, in pertinent part, as:
*757 “1. * * * up to fifty thousand dollars per person * * *
“(b) loss of earnings from work which the injured person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income, up to one thousand dollars per month for not more than three years from the date of the accident causing the injury” (emphasis supplied).
By the statute’s clear import the no-fault carrier is not obligated to pay for all basic economic loss sustained, but only for “first-party benefits”. In turn, subdivision 2 of section 671 of the Insurance Law defines “first-party benefits” as follows:
“payments to reimburse a person for basic economic loss * * * less;
“(a) twenty percent of lost earnings pursuant to paragraph (b) of subdivision one of this section;
“(b) amounts recovered or recoverable on account of such injury under state or federal laws providing social security disability benefits, or workmen’s compensation benefits, or disability benefits under article nine of the workmen’s compensation law, or medicare benefits (other than lifetime reserve days and provided further that the medicare benefits utilized herein do not result in a reduction of such person’s medicare benefits for a subsequent illness or injury); and
“(c) any amounts deductible under the applicable insurance policy.”
First-party benefits, therefore, are the claimant’s “basic economic loss” reduced by the sums recovered under specified statutory programs.
CONCLUSION
For the reasons set forth below, the court finds that the motions and cross motions seeking an order dismissing the complaint for failure to state a cause of action should be and are hereby granted.
In Kurcsics (supra), the Court of Appeals determined that the section 671 (subd 2, par [a]) of the Insurance Law “tax benefit” offset was to be subtracted from “gross wage *758 loss” and that wage loss recovery of up to $1,000 per month would be permitted as against the no-fault carrier after the tax benefit deduction. This result necessarily followed what the court (supra, p 458) found to be clear legislative intent, that is, that it was “abundantly clear that this provision [§671, subd 1, par (b)] contemplates recovery for loss of earnings up to $1,000 per month, and we would be remiss in reading the 20% deduction embodied in section 671 (subd 2, par [a]) of the Insurance Law as rewriting paragraph (b) of subdivision 1 to limit the maximum recovery to $800 per month for loss of earnings.” (See, also, Gurnee v Aetna Life & Cas. Co., 55 NY2d 184.)
However, the ruling in Kurcsics (supra) and, indeed, the reasoning underpinning same, are inapplicable here. (See 45 Alb L Rev 1205, 1219, Redefinition of Lost Earnings Benefits Under the New York No-Fault Law: Kurcsics v. Merchants Mutual Insurance Co.)
The court in Kurcsics (49 NY2d 451, supra) reasoned that subtracting the 20% tax benefit offset of section 671 (subd 2, par [a]) from the $1,000 basic economic wage loss maximum of section 671 (subd 1, par [b]) would render that provision meaningless, since each and every claimant would necessarily be deprived of the potential to recover $1,000 of their lost earnings. Such dilemma does not exist with respect to section 671 (subd 2, par [b]), which section contains no reference to lost earnings.
The offsets set forth in said section 671 (subd 2, par [b]) are not tied to the definition of lost earnings set forth in section 671 (subd 1, par [b]), nor need they be deducted from only such losses. In addition, the $1,000 figure is not rendered meaningless as an injured insured, such as Heitner here, has already received the $1,000 maximum amount by operation of the statute from the combination of his no-fault and disability benefits.
The policy underlying no-fault is prompt and full compensation only to the limits of basic economic loss (Montgomery v Daniels, 38 NY2d 41; Gurnee v Aetna Life & Cas. Co., supra). Neither of these cases supports a right to claim full compensation for all losses.
*759 The statutory language at issue is clear and unambiguous. First-party benefits are not synonymous with basic economic loss, but rather are equal to basic economic loss less any applicable statutory offset. The court finds that the Legislature, in fixing the “outer limit” of “wage loss recovery” at $1,000, intended such figure to represent the total recovery from both the no-fault carrier (as the secondary source) and designated other insurers (as the primary source), subject, of course, to further recovery by way of plenary tort action. (See McKinney’s Session Laws of NY, 1977, pp 2449, 2450.) That is, the Legislature wished that “disability payments” be primary and “be deducted” from no-fault benefits. This policy is further revealed in the 1977 amendment to section 205 of the Workers’ Compensation Law (repealing subd 10), and in the clear terms of section 29 (subd 1-a) of the Workers’ Compensation Law (added by L 1978, ch 572, § 2) which deems such benefits to be “in lieu of” first-party benefits and thus not susceptible to being a lien in a tort recovery action under subdivision 1 of section 673 of the Insurance Law.
This determination is consistent with the recent holding in Normile v Allstate Ins. Co. (87 AD2d 721). In Normile the Third Department concluded that deductions listed in section 671 (subd 2, par [b]) are to be added to the benefits paid by the no-fault insurer as first-party benefits to determine when the claimant has received the $50,000 total recoverable benefits for basic economic loss. So that, in determining when the $50,000 basic economic loss maximum has been reached, it has now been held that section 671 (subd 2, par [b]) deductions are not to be taken from gross economic loss but rather from the maximum permissible recovery for basic economic loss, to wit: the sum of $50,000. (See, also, Vinson v Berkowitz, 83 AD2d 531.)
Accordingly, the complaint herein is dismissed.

 Safeco’s application for leave to intervene must be denied as such party is a served named defendant. In any event, in light of this court’s decision, such application is moot.