Abraham D. Heitner, Individually and on Behalf of All Others Similarly Situated, Appellant, v Government Employees Insurance Company et al., Respondents.

Second Department, August 6, 1984

#### APPEARANCES OF COUNSEL

*Shayne, Dachs, Stanisci & Corker* (*Norman H. Dachs* of counsel), for appellant.

*Cahill Gordon & Reindel* (*William E. Hegarty, Charles Platto, Susan Buckley* and *Marc J. Korpus* of counsel), for Government Employees Insurance Company and others, respondents.

*Held, Cheven, Sternberg & Held* (*Donald J. Weiss* on the brief), for Country-Wide Insurance Company, respondent.

*Rivkin, Leff, Sherman & Radler* (*Leonard L. Rivkin, Frank L. Amoroso* and *Nancy K. Eisner* of counsel), for Lumbermens Mutual Casualty Company, respondent.

*Lynn, Ledwith & Quinlan* (*Peter K. Ledwith* of counsel), for Safeco National Insurance Company, respondent.

MOLLEN, P. J.

The sole question presented on this appeal is whether, in calculating "[f]irst party benefits" to be paid to a no-fault automobile accident insurance claimant who has sustained lost earnings in excess of $1,000 per month (see Insurance Law, § 671, subd 2; § 672), disability benefits previously paid to the claimant should be deducted from the claimant's gross or actual lost monthly earnings, or from the wage-loss ceiling of $1,000 per month set forth in section 671 (subd 1, par [b]) of the Insurance Law. Special Term concluded, in essence, that amounts received from collateral sources, viz., the disability benefits, should be deducted from the $1,000 per month lost-earnings ceiling (118 Misc 2d 752). We disagree with that conclusion and therefore reverse.

The essential facts are not in dispute. On November 6, 1981, Abraham D. Heitner, the claimant, was injured in an automobile accident which involved the use and operation of a motor vehicle insured by Government Employees Insurance Company (GEICO). As an "eligible injured person" (see 11 NYCRR 65.12), the claimant, who was earning approximately $1,766 per month, submitted his no-fault lost-earnings claim to GEICO in the amount of $1,000, the maximum allowable under the statute (see Insurance Law, § 671, subd 1, par [b]). GEICO calculated the claimant's first-party benefits to be $582 per month by deducting from the $1,000 lost-earnings ceiling, the sum of $418, representing the amount of the monthly disability benefits paid to him pursuant to article 9 of the Workers' Compensation Law.

Perceiving this method of calculating first-party benefits to be an industry-wide practice, the claimant instituted an action, in his individual and representative capacities, by the service of summons and complaint both dated March 5, 1982 (see CPLR 901 et seq.).[1] GEICO and other insurance carriers, who were authorized and licensed in New York to

---

1. The claimant had previously commenced a plenary tort action seeking to recover as damages "non-economic loss", and economic loss greater than basic economic loss (see Insurance Law, § 673; *Normile v Allstate Ins. Co.,* 87 AD2d 721, affd 60 NY2d 1003; *Joyce v Winkler,* 71 AD2d 28, 30); the claimant's wife, a coplaintiff in the plenary action, sought recovery for loss of consortium.

write no-fault automobile accident insurance policies, were named as defendants in their individual and representative capacities. Among other things, the claimant, on his behalf and on behalf of the members of the plaintiff class, sought judgment for damages sustained by them as a consequence of the defendants' method of calculating first-party benefits, which method, the claimant alleged, was incorrect.

GEICO and certain other named defendants moved pursuant to CPLR 3211 (subd [a], par 7) to dismiss the complaint on the ground that it failed to state a cause of action. Defendants Lumbermens Mutual Casualty Company and Country-Wide Insurance Company cross-moved for dismissal on the same ground. Safeco National Insurance Company moved pursuant to CPLR 907 and 1012 to intervene in the action, appear, and defend as a party defendant, and also cross-moved to dismiss the complaint on the ground that it failed to state a cause of action.[2] In essence, the movants and cross movants argued that, in calculating their liability, i.e., first-party benefits, amounts received from such collateral sources as disability benefits are to be deducted from the $1,000 lost-earnings ceiling found in section 671 (subd 1, par [b]) of the Insurance Law.

Special Term agreed with this interpretation of the statute and dismissed the complaint. The court explained that: "[t]he statutory language at issue is clear and unambiguous. First-party benefits are not synonymous with basic economic loss, but rather are equal to basic economic loss less any applicable statutory offset. The court finds that the Legislature, in fixing the 'outer limit' of 'wage loss recovery' at $1,000, intended such figure to represent the total recovery from both the no-fault carrier (as the secondary source) and designated other insurers (as the primary source), subject, of course, to further recovery by way of plenary tort action * * * That is, the Legislature wished that 'disability payments' be primary and 'be deducted' from no-fault benefits" (118 Misc 2d, 752, 759, *supra*).

Based upon our reading of the no-fault provisions of the Insurance Law (Insurance Law, art XVIII), its legislative

---

**2.** It is unclear why Safeco National Insurance Company moved to intervene since it had been named as a member of the defendant class.

history, and recent case law, we are convinced that the proper method of calculating the claimant's first-party benefits is to deduct from his gross or actual lost monthly earnings ($1,766), the monthly disability benefits paid to him. The no-fault insurance carrier's (GEICO's) liability, however, is limited to the $1,000 per month ceiling prescribed by section 671 (subd 1, par [b]) of the Insurance Law. To the extent that his lost earnings exceed the $1,000 ceiling, the claimant is free to seek recovery from the responsible tort-feasor (see n 1, *supra*).

Subdivision 1 of section 671 of the Insurance Law in relevant part defines "[b]asic economic loss" as:

"up to fifty thousand dollars per person * * *

"(b) loss of earnings from work which the injured person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income, *up to one thousand dollars per month* for not more than three years from the date of the accident causing the injury" (emphasis added).[3]

Pursuant to section 672 of the Insurance Law, a person injured as a consequence of a motor vehicle accident may recover "[f]irst party benefits", defined in relevant part in subdivision 2 of section 671 as:

"basic economic loss * * * less;

"(a) twenty percent of lost earnings pursuant to paragraph (b) of subdivision one of this section;

"(b) amounts recovered or recoverable on account of such injury under state or federal laws providing social security disability benefits, or workmen's [*sic*, workers'] compensation benefits, or disability benefits under article nine of the workmen's [*sic*, workers'] compensation law, or medicare benefits".[4]

In *Kurcsics v Merchants Mut. Ins. Co.* (49 NY2d 451), the Court of Appeals was called upon to determine whether, in

---

**3.** "Basic economic loss" also broadly includes "all necessary [treatment] expenses" (Insurance Law, § 671, subd 1, par [a]), and, within certain monetary and time limitations, "all other reasonable and necessary expenses incurred" (Insurance Law, § 671, subd 1, par [c]).

**4.** Also to be deducted from "[b]asic economic loss" are "any amounts deductible under the applicable insurance policy" (Insurance Law, § 671, subd 2, par [c]).

calculating first-party benefits in cases involving actual or gross loss of earnings in excess of $1,000 per month, the deduction for 20% of lost earnings, found in section 671 (subd 2, par [a]) of the Insurance Law, was to be made from actual or gross lost earnings or, as the respondent insurance company contended, from the $1,000 per month lost-earnings ceiling specified in section 671 (subd 1, par [b]).

After reviewing the legislative purposes underlying the no-fault provisions of the Insurance Law and the statute's language, the court concluded in *Kurcsics* that, notwithstanding the interpretation of the Superintendent of Insurance to the contrary, "the 20% deduction * * * was meant to reduce only actual lost earnings claimed, thereby allowing a maximum recovery of $1,000 per month as first-party benefits" (49 NY2d 451, 457, *supra*). In arriving at this conclusion, the court reasoned that: "[s]ection 671 (subd 1, par [b]) of the Insurance Law provides that one of the components of 'basic economic loss' is loss of earnings from work and further states, in unequivocal terms, that this amount shall not exceed 'one thousand dollars per month for not more than three years from the date of the accident causing the injury.' Thus, it is abundantly clear that this provision contemplates recovery for loss of earnings up to $1,000 per month, and we would be remiss in reading the 20% deduction embodied in section 671 (subd 2, par [a]) of the Insurance Law as rewriting paragraph (b) of subdivision 1 to limit the maximum recovery to $800 per month for loss of earnings. If the Legislature had so intended, section 671 (subd 1, par [b]) would limit recovery to $800 per month and not authorize, as it presently does, recovery 'up to one thousand dollars per month' for loss of earnings. The 20% deduction should not be treated as taking away what benefits section 671 (subd 1, par [b]) bestows for '[i]t remains a basic principle of statutory construction that a court will "not by implication read into a clause of a rule or statute a limitation for which * * * no sound reason [can be found] and which would render the clause futile"'" (49 NY2d 451, 457-458, *supra*).

The reasoning adopted by the Court of Appeals in *Kurcsics* (*supra*) concerning the 20% deduction set forth in section 671 (subd 2, par [a]) of the Insurance Law, is

similarly applicable to the deductions set forth in paragraph (b) of subdivision 2 of the same section. Nothing appears in the language of subdivision 2 of section 671, its structure, or legislature history which calls for treating paragraph (b) differently than paragraph (a) thereof in calculating first-party benefits. Significantly, the *Kurcsics* court stated (49 NY2d 451, 458, *supra*): "[t]he $1,000 per month limitation embodied in section 671 (subd 1, par [b]) is not part and parcel of the definition of lost earnings, but, merely represents the outer limit of recovery set down by the Legislature in the no-fault automobile. insurance scheme. Thus, we hold today that an injured person can recover up to $1,000 per month from the insurance carrier for lost earnings. The statutory scheme envisions nothing less".

Moreover, the statute providing for the disability benefits received by the claimant in the case at bar long antedated the adoption of the no-fault provisions of the Insurance Law (see Workmen's [now Workers'] Compensation Law, § 200 *et seq.*, added L 1949, ch 600, § 1, eff April 13, 1949). Interpreting section 671 (subd 2, par [b]) in the manner adopted by Special Term would have the effect of rewriting the no-fault provisions of the Insurance Law, and depriving a workers' compensation claimant of those benefits which long preceded the adoption of the no-fault system. If, in fact, the Legislature had intended that result, it could have provided in section 671 (subd 1, par [b]) that basic economic loss includes "loss of earnings from work * * * up to one thousand dollars", less "amounts recovered or recoverable * * * under state or federal laws providing * * * disability benefits under article nine of the Workmen's Compensation Law [*sic*]", rather than have provided, as it did, for such deductions in the definition of "[f]irst party benefits" under section 671 (subd 2, par [b]).

Subsequent to *Kurcsics,* the Appellate Division, Third Department, in *Normile v Allstate Ins. Co.* (87 AD2d 721, affd 60 NY2d 1003) held that "the statutory setoffs enumerated in subdivision 2 of section 671 are to be deducted from basic economic loss up to $50,000 [rather than] * * * from actual economic loss". The holding was grounded on the court's opinion that "the $50,000 limitation embodied

in section 671 of the Insurance Law is clearly an integral part of the definition of basic economic loss" (87 AD2d 721, 722, *supra*). By way of contrast, the court in *Normile* distinguished *Kurcsics* (*supra*), noting that "[it] dealt with a different provision of section 671 of the Insurance Law. It was concluded in *Kurcsics* that the $1,000 limitation contained in section 671 (subd 1, par [b]) of the Insurance Law was not part and parcel of the definition of lost earnings" (87 AD2d 721, 722, *supra*). The implication is clear that had the issue been presented as to whether the disability benefits referred to in section 671 (subd 2, par [b]) should be deducted from the $1,000 per month lost-earnings ceiling or from actual or gross lost monthly earnings, the court would have opted for the latter.

Recently, in *Matter of Granger v Urda* (44 NY2d 91, 98), the Court of Appeals discussed the purposes of the no-fault provisions of the Insurance Law, stating: "When the no-fault provisions were added to the Insurance Law (L 1973, ch 13), the then existing system, 'a system which costs too much, takes too long to pay off and delivers too little protection — [was] cast aside. In its stead [there now exists] a new insurance reparations system which — assures that every auto accident victim will be compensated for substantially all of his economic loss, promptly and without regard to fault; — will eliminate the vast majority of auto accident negligence suits, thereby freeing our courts for more important tasks' " (see, also, *State Farm Mut. Auto. Ins. Cos. v Brooks,* 78 AD2d 456, 458, mot to dismiss app granted 54 NY2d 753; *Johnson v Hartford Ins. Co.,* 100 Misc 2d 367, 370).

The legislation was also intended to prevent windfall or double recoveries for economic loss by claimants who have received compensation for that loss from collateral sources (see *Karmilowicz v Allstate Ins. Co.,* 77 AD2d 131, app dsmd 54 NY2d 753; see, also, Memorandum of State Executive Department on L 1977, ch 892, in McKinney's Session Laws of NY, 1977, p 2448). By distinguishing between "[f]irst party benefits" (Insurance Law, § 671, subd 2), to which an eligible injured person is entitled, and "[b]asic economic loss" (Insurance Law, § 671, subd 1), "the Legislature has attempted to compensate the accident victim for

the earnings he or she would have, in fact, realized, while, at the same time, ensuring that an unjustified financial burden is not thrust upon the insurance companies which would eventually be reflected in higher insurance premiums. In addition, the possible motivation for recovered accident victims to refrain from returning to work, if windfall recovery would be permitted, is minimized, if not entirely eliminated" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 457, *supra*). As this court recently noted in a similar context, "[w]hile the purpose of the [no-fault provisions of the Insurance Law] is to make an injured party whole, it is not designed to provide such party with a windfall" (*Aetna Cas. & Sur. Co. v Jackowe*, 96 AD2d 37, 44).

Deducting disability benefits from actual or gross lost monthly earnings, rather than from the $1,000 lost-earnings ceiling, does not result in a windfall or double recovery any more than does the deduction for 20% of lost earnings from actual or gross lost monthly earnings pursuant to *Kurcsics* (*supra*). For example, assuming that a no-fault claimant sustains a gross monthly loss of earnings of $1,200 and is paid $400 per month in disability benefits, then, after deducting 20% of lost earnings ($240) from the $1,200 loss as required by section 671 (subd 2, par [a]) and deducting the amount recovered in disability benefits ($400) as required by section 671 (subd 2, par [b]), the no-fault carrier's liability to the claimant would be $560 per month. As another example, if a no-fault claimant sustains a gross monthly loss of earnings of $2,000 and is paid $400 per month in disability benefits, the insurance carrier's liability would be limited to $1,000, notwithstanding that, after making the appropriate deductions under section 671 (subd 2, pars [a], [b]), the remainder of the claimant's loss is $1,200. Under both examples, the no-fault claimant does not have the benefit of a windfall or double recovery and the no-fault insurance carrier's liability to the claimant remains fixed at $1,000 per month, or less.

Consistent with *Kurcsics* (*supra*), and the clear language of section 671 (subd 1, par [b]; subd 2, pars [a], [b]), plaintiff's first-party benefits should have been calculated by deducting from his actual gross lost monthly earnings

($1,766), 20% of lost earnings ($353.20) and disability benefits ($418). Under this method, GEICO's liability to the claimant is $994.80,[5] rather than $582 as contended by GEICO.

That the no-fault provisions of the Insurance Law were intended to be consumer-oriented legislation cannot be gainsaid (see *Matter of Granger v Urda,* 44 NY2d 91, 98, *supra*). As noted, *supra,* an inadequate insurance reparations system was replaced by a system which " 'assures that every auto accident victim will be compensated for substantially all of his economic loss, promptly and without regard to fault' " (*Matter of Granger v Urda, supra,* p 98). Yet, the practical effect of Special Term's interpretation of that legislation is to provide a windfall to the no-fault insurance companies, deprive the person injured in an automobile accident of disability benefits to which he previously had been entitled under the Workers' Compensation Law, and shift to that person economic burdens which the legislation was intended to ameliorate. On the basis of the foregoing, we are simply unable to subscribe to this interpretation of the statute.

Finally, to support their position that the statutory setoff in question should be deducted from the $1,000 per month wage-loss ceiling, the defendants cite, *inter alia,* a document entitled "Seventeenth Amendment to Regulation No. 68" (11 NYCRR 65.15 [n] [2]). That amendment was promulgated by the Superintendent of Insurance in accordance with his statutory authority (see Insurance Law, § 21) "to interpret the provision of the Insurance Law" (*State Farm Mut. Auto. Ins. Cos. v Brooks,* 78 AD2d 456, 458, *supra*). As stated by the Court of Appeals: "[w]here the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpreta-

---

**5.** On appeal, the claimant contends that his disability benefits amounted to $411.66, rather than $418 per month. Assuming the claimant to be correct, the $6.34 difference would entitle him to the maximum payment allowable under the statute — $1,000 per month. As recognized by the claimant, the difference does not affect the method of calculating first-party benefits.

tion is not irrational or unreasonable, it will be upheld * * * Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretative regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight" (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459, *supra*).

In our view, the question presented "is one of pure statutory reading and analysis", and the customary rule of deference to the Superintendent of Insurance is not applicable.

Accordingly, the judgment appealed from should be reversed insofar as appealed from, on the law, and the motion and cross motions should be denied insofar as they were to dismiss the complaint for failure to state a cause of action.

MANGANO, THOMPSON and NIEHOFF, JJ., concur.

Judgment of the Supreme Court, Nassau County, dated April 13, 1983, reversed insofar as appealed from, on the law, with one bill of costs payable jointly by respondents appearing separately and filing separate briefs, and motion and cross motions denied insofar as they were to dismiss the complaint for failure to state a cause of action.