OPINION OF THE COURT
David Demarest, J.
In this action for no-fault benefits, plaintiff seeks compensation for lost wage benefits, arguing he has demonstrated “future earnings reasonably projected” under 11 NYCRR 65.15 (o) (2) (iii) since, due to knee injuries sustained, he was required to *946 defer his admission to the New York State Police Academy. Defendant Allstate Insurance Company opposes the relief insofar as plaintiff was, admittedly, unemployed at the time of the accident with its insured in August 2000.
Plaintiff tenders the following proof. He was not employed on August 12, 2000, the day of the accident, having just quit his job in Rochester to relocate to St. Lawrence County with his wife who was to care for her ailing mother. Plaintiff alleges in his sworn affidavit that his “goal at the time [of the accident] was to take the State Police examination and enter the State Police Academy.” As a result of his knee injury, he states he had trouble finding work, becoming employed in January 2001 at the annual salary of $28,000.
Seven months after suffering his injury, plaintiff took the State Police examination on March 24, 2001. On June 8, 2001, plaintiff underwent reconstructive surgery. Ten days later, plaintiff was informed of his examination score and favorable ranking. Further processing of his application included, among other things, a physical examination which was scheduled for August 4-5, 2001. Based on his need to recover from his recent surgery and rehabilitate his knee, plaintiff requested and was granted a deferment from this processing.
On August 9, 2002, plaintiffs eligibility was reconsidered, he passed the physical examination, and he entered the academy on April 3, 2003. Up until this point in time, he continued his employment at McCadam Cheese at the above-stated salary. Using the starting pay rate for a New York State Police recruit in January 2002 (and the attendant published salary increases thereafter), plaintiff compares his annualized $28,000 salary and makes a claim against defendant for 80% of the loss, totaling approximately $24,000.
Plaintiff completed the no-fault application on August 21, 2000, nine days after the accident. He checked the “No” boxes in answer to the questions “Did you lose time from work?,” “Were you receiving unemployment benefits at the time of the accident?,” and left blank the line for reporting his average weekly earnings. Despite having answered “No” to the inquiry about having lost any time from work, he nevertheless went on to answer the related inquiry “If yes, how much time?” by responding “Lost time looking for work.” Notwithstanding the propriety of defendant’s failure to send plaintiff wage loss verification forms in conformance with regulations and its duty to disclaim the wage loss claim within 30 days, plaintiffs later *947 retained, counsel made a lost wage benefits claim by letter December 12, 2000. Three days later, defendant denied the claim. Relying on 11 NYCRR 65.15 (o) (2) (iii), plaintiff’s counsel opines the disclaimer ignores this insurance regulation: “Loss of earnings from work shall not necessarily be limited to the applicant’s actual level of earnings at the time of the accident, but may also include demonstrated future earnings reasonably projected” (Emphasis added.) Plaintiff argues that his future earnings projections based on income which would have otherwise been received had he been physically able to have been admitted to the State Police Academy 15 months earlier, in January 2002, constitute “demonstrated future earnings reasonably projected.”
The Legislature’s intent in enacting the No-Fault Law was to assure “that every auto accident victim will be compensated for substantially all of his economic loss, promptly and without regard to fault.” (Herman v Government Empls. Ins. Co., 115 Misc 2d 146, 147 [Civ Ct, Queens County 1982], citing 1973 NY Legis Ann, at 298; Comment, New York Adopts No-Fault: A Summary and Analysis, 37 Alb L Rev 662, 671.) To this end, Insurance Law § 5102 (a) (2) provides reimbursement for “[l]oss of earnings from work which the [injured] person would have performed had he not been injured.” Consistent with this statutory framework, regulations have been promulgated to recompense a recuperating, injured worker who is discharged from employment solely because of inability to perform her/his job duties. Similarly, a plant shutdown, strike or other work stoppage which occurs while the worker is disabled results in cessation of benefits insofar as the position would have been lost regardless of the accident’s happening. These regulations permit upward or downward adjustments to reflect the circumstances as they actually exist by providing payments for wages which would have otherwise been earned had the injury never happened. (Herman, supra at 147-148.) In Herman, the court held that the basic economic loss payable under section 5102 “continuéis] until the injured person is gainfully employed again.” (Id. at 149.) “The legislative intent is to determine as accurately as possible the claimant’s actual loss.” (Herman at 147, citing State Farm Mut. Auto. Ins. Cos. v Brooks, 78 AD2d 456 [4th Dept 1981], appeal dismissed 54 NY2d 753 [1981].)
As is usual, the particular facts of this case do not fall neatly into any well-settled scenario. Plaintiff had voluntarily quit his job only weeks before his injury in anticipation of relocating *948 closer to his mother-in-law’s residence in St. Lawrence County. Apparently, plaintiff and his wife completed their move sometime between August 2000 and January 2001, as evidenced by plaintiffs employment in St. Lawrence County that January. Although it is alleged in his no-fault application form that the injury caused him to lose time searching for a job, he was able to secure employment so as to accommodate his move from western New York. Plaintiff has not established that his injuries precluded him from obtaining employment in a timely manner.
Plaintiff’s no-fault application form does not refer to any expected or anticipated salary loss in connection with his potential future employment as a New York State Trooper. In any event, such a statement would have constituted speculation since plaintiff had yet to even take the examination, which occurred seven months later. It was only after having had his examination scored, three months thereafter, that he learned of his favorable ranking amongst all the other candidates, virtually assuring his admission to the academy. Moreover, his admission would have been contingent upon passing a physical examination and other testing. It is notable that, only nine days after the accident, plaintiffs no-fault application memorialized his then-present intentions which were to “look[ ] for work.” Thus, regardless of his goal to one day become a New York State Trooper, his immediate intentions were to seek employment in the interim.
Although plaintiffs later efforts to rehabilitate his knee beyond his physician’s expectations and his admission to the State Police Academy are to be lauded, plaintiffs stated “goal at the time [of the accident] ... to take the State Police examination and enter the State Police Academy” cannot in any way be said to constitute the type of proof necessary to support “demonstrated future earnings reasonably projected” as of the no-fault benefit application date of August 21, 2000. That’s not to say the result would be the same had plaintiff suffered injury after being apprised of his admission to the academy where his injury effectively precluded/delayed his intended matriculation.
In determining payment of benefits in the form of lost wages, some certainty of measurement must exist at the date of the application for such benefits, else insurers would pay lost wages retroactively. Clearly, however, the legislation provides for prompt payment and to compensate an injured worker during the period of disability. And, if due to the injury, it is necessary for the worker to secure new employment, compensation is paid *949 to the date of new employment for earnings (s)he would have had but for the injury. Any other construction would make application of this statute open-ended, requiring the insurer take into account circumstances that did not actually exist at the time of the claim and would permit delay in recompensing the injured worker. “The purpose of this legislation is not to provide a windfall for either the injured person or the insurance carrier.” (Herman at 149, citing Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 457 [1980].)
By way of example, consider a recuperating worker who decides to fulfill his/her lifetime goal by re-enrolling in college to finish the few credit hours necessary to obtain his/her college degree during those months of free time during his/her convalescence. There is nothing in the legislation which would lead this court to believe it intended to make the insurer liable for any higher rate of pay the now newly-degreed worker commands in the workplace as and for “basic economic loss.” Defendant should be assured of some reasonable date of measure as to expectations of pay in calculating damages. In the case at hand, plaintiffs no-fault benefits application, dated August 21, 2000, was the proper measuring stick. On that date, plaintiffs goal did not constitute “demonstrated future earnings.”
Plaintiffs motion is, therefore, denied. Defendant’s cross motion is granted, and the complaint is dismissed.