■ In the Matter of the Arbitration between LIBERTY MUTUAL FIRE INSURANCE COMPANY, Respondent, and MARCIA MALATINO, Appellant, et al., Respondent. [904 NYS2d 828]—

Cardona, P.J. Appeal from an order of the Supreme Court (Aulisi, J.), entered October 20, 2009 in Fulton County, which granted petitioner's application pursuant to CPLR 7503 to stay arbitration between the parties.

While respondent Marcia Malatino (hereinafter respondent) was returning to work after taking a break in the employer's parking lot, she walked into a piece of sheet metal extending approximately five feet beyond the tailgate of a coworker's parked pickup truck,[1] sustaining facial lacerations and a broken nose. According to the record, the coworker had torn the sheet metal off a building on his property and planned to deliver it to a junkyard after work.

Thereafter, respondent settled with the coworker's automobile liability insurer for $25,000—the policy limit—and received a lump-sum workers' compensation award. Seeking additional compensation, respondent subsequently demanded arbitration

---

1. No red flag was placed on the sheet metal in accordance with Vehicle and Traffic Law § 375 (27) despite the fact that it protruded more than four feet beyond the tailgate of the pickup.

as a named insured under the supplemental underinsured motorists provisions of an insurance policy issued by petitioner. Petitioner sought to stay arbitration on the grounds that respondent's injuries did not, as required by the policy, arise out of the "ownership, maintenance or use" of the coworker's motor vehicle and, alternatively, because respondent was injured as a result of the alleged negligence of a coworker, workers' compensation was her exclusive remedy (*see* Workers' Compensation Law § 29 [6]). Supreme Court, finding, among other things, that there was no use or operation of the vehicle, granted petitioner's application, and this appeal ensued.

Initially, we note that the issue herein involves the right to arbitration under the specific terms of the parties' supplemental underinsured motorists policy and not the application of any statutory no-fault provisions.[2] A court may grant an application to stay arbitration "where 'the particular claim sought to be arbitrated is outside [the] scope' of the agreement to arbitrate" (*Matter of Farm Family Cas. Ins. Co. [Trapani]*, 301 AD2d 740, 741 [2003], quoting *Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 7 [1980]). Generally, "policies of insurance are to be construed liberally in favor of the insured and strictly against the insurer" (*Penna v Federal Ins. Co.*, 28 AD3d 731, 731 [2006]; *see Government Empls. Ins. Co. v Kligler*, 42 NY2d 863, 864 [1977]; *see generally Turkow v Erie Ins. Co.*, 20 AD3d 649, 650 [2005]). Where ambiguity exists as to coverage, doubt should be resolved in favor of the insured (*see Handelsman v Sea Ins. Co.*, 85 NY2d 96, 101 [1994]; *Penna v Federal Ins. Co.*, 28 AD3d at 731). Supplemental underinsured motorists coverage policies, such as the one at issue herein, apply only when an insured's injuries are "caused by an accident arising out of such [underinsured] motor vehicle's ownership, maintenance or use" (11 NYCRR 60-2.3 [f] [II]; *see Matter of Farm Family Cas. Ins. Co. [Trapani]*, 301 AD2d at 741). "Use" of a vehicle encompasses more than just driving, and extends to other incidental activities (*see Rowell v Utica Mut. Ins. Co.*, 77 NY2d 636, 639 [1991]). Furthermore, the use of the underinsured vehicle must be a proximate cause of the injuries for which coverage is sought (*see Matter of Farm Family Cas. Ins. Co. [Trapani]*, 301 AD2d at 741).

Clearly, the pickup truck was not being operated at the time of the accident—having been parked in the employer's lot when the coworker arrived at work. The focus herein, however, is whether the vehicle was in *use* so as to fall within the scope of

---

**2.** Thus, we do not find the dissent's reference to cases interpreting no-fault provisions in insurance policies to be applicable.

the terms of the supplemental underinsured motorists policy. Here, at the time of respondent's injury, the pickup truck was being used by the coworker to transport the sheet metal to the junkyard after work. Construing the language of the supplemental underinsured motorists policy liberally "in favor of the insured and strictly against the insurer" (*Penna v Federal Ins. Co.*, 28 AD3d at 731), and given the causal connection between the use of the pickup truck to transport the sheet metal and respondent's injuries, we find that respondent's request for arbitration falls within the scope of the parties' agreement. Accordingly, under the particular circumstances herein, the application for a stay of arbitration should have been denied.

Furthermore, the record is clear that the use of the pickup truck to transport the sheet metal was unrelated to the coworker's employment and, therefore, the exclusive remedy provision of Workers' Compensation Law § 29 (6) is inapplicable and cannot form the basis for granting the stay of arbitration.

Spain, Stein and Egan Jr., JJ., concur.

McCarthy, J. (dissenting). Because respondent Marcia Malatino (hereinafter respondent) did not sustain injuries arising out of the ownership, maintenance or use of a motor vehicle, petitioner was entitled to a stay of arbitration.[1] Respondent's coworker parked his pickup truck in the employer's parking lot in the morning and apparently intended to leave the vehicle there for his entire eight-hour shift. If respondent had walked into the parked truck itself, her injuries would not have arisen out of the use of the vehicle (*see Wooster v Soriano*, 167 AD2d 233, 234 [1990]; *McConnell v Fireman's Fund Am. Ins. Co.*, 49 AD2d 676, 677 [1975]). The same result should follow when she walked into materials protruding from the bed of the truck.

While "use" of a motor vehicle encompasses more than just driving and extends to other incidental activities (*see Rowell v Utica Mut. Ins. Co.*, 77 NY2d 636, 639 [1991]), there are limits to that term and the corresponding insurance coverage.[2] The majority holds that the truck here was being used to contain

1. The parties do not contend that respondent's accident arose from ownership or maintenance of a motor vehicle, so we likewise focus on whether her injuries arose from the vehicle's use.

2. The majority asserts that case law requires us to strictly construe the insurance policy against the insurer (*see Penna v Federal Ins. Co.*, 28 AD3d 731, 731 [2006]). While that is the general rule—based upon a canon of contract interpretation that courts construe terms against the drafter (*see Guardian Life Ins. Co. of Am. v Schaefer*, 70 NY2d 888, 890 [1987])—it is unfair to apply that rule where, as here, the provision at issue was not written by the insurer, but was drafted by the Insurance Department, and its inclusion was mandated by law (*see* Insurance Law § 3420 [f] [1]; 11 NYCRR 60-2.3

sheet metal until the coworker could transport it, rendering the vehicle in "use." This broad finding places no parameters on the use of a vehicle. It is unclear if the majority considered that the truck was in use while containing the sheet metal only because the coworker intended to transport the sheet metal to the junkyard that same day, or if the truck would be considered in use as a vehicle if the sheet metal was placed there a year earlier and the coworker regularly parked his truck with metal protruding from his tailgate. Conversely, if the truck was never moved from the parking lot but was regularly utilized to store different materials in the same location, would the parked truck constantly be in use as a vehicle? Rather than expanding the application of the statute and regulation requiring coverage for injuries arising out of a "motor vehicle's ownership, maintenance or use" (11 NYCRR 60-2.3 [f] [II]; *see* Insurance Law § 3420 [f] [1]), we should adhere to the current rule that looks to whether the "circumstances constituted an 'on-going activity relating to the vehicle' which would necessitate a conclusion that the vehicle was in use" (*Trentini v Metropolitan Prop. & Cas. Ins. Co.*, 2 AD3d 957, 958 [2003], *lv dismissed* 2 NY3d 823 [2004], quoting *Matter of Celona v Royal Globe Ins. Co.*, 85 AD2d 635, 636 [1981]; *see Zaccari v Progressive Northwestern Ins. Co.*, 35 AD3d 597, 599-600 [2006]; *Wooster v Soriano*, 167 AD2d at 234).

In *Sullivan v Barry Scott Agency, Inc.* (23 AD3d 889 [2005]), this Court held that a plaintiff's back injury caused by lifting a heavy box was not related to the use of a motor vehicle, even though he was standing in a delivery van when unloading the box. We found the proximity to the vehicle "wholly incidental," "[a]s plaintiff's injuries would have occurred even if he had been standing on the ground and lifting the box" (*id.* at 890; *see Sochinski v Bankers & Shippers Ins. Co.*, 221 AD2d 889, 889 [1995]; *United Servs. Auto. Assn. v Aetna Cas. & Sur. Co.*, 75 AD2d 1022, 1022 [1980]; *cf. Walton v Lumbermens Mut. Cas. Co.*, 88 NY2d 211, 215 [1996]). Similarly, respondent here would have received the same injuries had the sheet metal she walked into been protruding from any object other than a vehicle. Under the circumstances, there was no ongoing activity related to the parked truck—in its capacity as a motor vehicle, rather than as a storage bin for sheet metal—so as to necessitate a conclusion that the vehicle was in use when respondent was injured (*see Sullivan v Barry Scott Agency, Inc.*, 23 AD3d at

[f]; *see generally Walton v Lumbermens Mut. Cas. Co.*, 88 NY2d 211, 214 [1996]). I therefore find cases interpreting mandatory no-fault provisions more pertinent.

890; *Matter of New York Cent. Mut. Fire Ins. Co. [Hayden— Allstate Ins. Co.]*, 209 AD2d 927, 928 [1994] [staying arbitration where "accident did not arise out of the inherent nature of the automobile as such"]; *Reisinger v Allstate Ins. Co.*, 58 AD2d 1028, 1028 [1977], *affd* 44 NY2d 881 [1978]; *McConnell v Fireman's Fund Am. Ins. Co.*, 49 AD2d at 677). Accordingly, petitioner was entitled to a stay of arbitration because its insurance policy does not provide coverage for respondent's injuries.

Ordered that the order is reversed, on the law, with costs, and application denied.