OPINION OF THE COURT
Richard B. Meyer, J.
Motion and cross motion by defendant Merchants Mutual Insurance Co. (Merchants), and cross motion by defendant Kemper, Unitrin Auto and Home Insurance Company, Inc. (Kemper), for summary judgment dismissing the complaint.
A.
On December 2, 2009, at approximately 5:00 a.m., the decedent Anthony T. Morette (Morette) was allegedly struck by an unidentified motor vehicle in a hit-and-run accident while he was jogging near the intersection of New York State Route 74 and Shore Airport Road in the town of Ticonderoga, Essex County. Morette died a short time later, survived by his wife, plaintiff Laraine Susan Morette, and his daughter, plaintiff Kristi Marie Morette. At the time of the incident, a commercial auto insurance policy was in effect issued by Merchants to “A.T. Morette Electric LLC,” a limited liability company of which *154 Morette was the sole member. Also in force was an automobile liability policy issued by Kemper to Morette and his wife. Both policies provided supplementary uninsured motorists (SUM) coverage.
In June 2010 plaintiffs commenced this action against Merchants and Kemper seeking a declaratory judgment that both insurers are liable for the payment of SUM coverage arising out of Morette’s death. The defendants now move for summary judgment dismissing the complaint. Merchants asserts that the SUM coverage in its policy does not apply because its named insured was a limited liability company, not Morette. Also, Merchants and Kemper both contend in their respective cross motions that witnesses have identified two possible vehicles at the scene around the time of the accident and therefore conditions precedent to SUM coverage — that neither the owner nor driver of the offending vehicle can be identified and plaintiffs have exhausted all reasonable efforts to identify such vehicle and driver — cannot be met. Specifically, the defendants contend that sworn statements obtained by law enforcement from Robert Johnston (Johnston) and Christopher Steady (Steady), as well as Steady’s deposition testimony as a nonparty witness, establish that the owner and driver can be identified.
Both Johnston and Steady are employees of Cleveland Logging, which allegedly is partially owned by Steady’s mother, who were delivering wood to the International Paper Company Mill in Ticonderoga on December 2, 2009. Johnston gave two statements to law enforcement, one on December 8, 2009, just six days after Morette’s death, and the other on August 17, 2010 after he had left the employ of Cleveland Logging “because of family issues.” In his initial statement, Johnston said that while he was at the mill waiting to unload his truck Steady called him on a cell phone at approximately 5:20-5:25 a.m. and “sounded very excited on the phone.” Johnston “could not really understand him” and “could not make out a lot of what was said.” In his later statement, Johnston provides additional, possibly inconsistent, details. He states that after he unloaded his truck and left the mill he noticed that Steady had called Johnston’s cell phone. This was “at about 5:35-5:40 a.m.” Johnston described Steady as “very anxious, very nervous, and act[ing] paranoid,” but admits he “couldn’t understand him.” He said that Steady “called me on the CB radio and all I heard was an accident down the road.” Johnston also relates a subsequent conversation with Steady in which Steady told him *155 about observing “a red car” go “through the stop sign” at the intersection of Shore Airport Road and State Route 22 and “saw the lights bouncing on the car and the car [stop].” He claims that Steady also told him that he stopped his truck, got out, spoke with the driver of that car, a woman with blonde hair, and she gave Steady “all of her information” before “they both left the scene . . . leaving the body in the roadway.” Johnston opines at the end of his statement that he believes Steady was involved in the accident and that Steady’s story did not make sense.
In Steady’s statement to law enforcement dated December 5, 2009, he relates that he was traveling south on State Routes 74 and 22 when he saw a vehicle go through “the stop sign coming off from Shore Airport Rd” traveling “about 15 miles per hour.” He described seeing “the headlights bounce,” “the brake lights come on, the back up lights come on then the brake lights went off.” Steady states that the vehicle “looked like a gold Mazda MPV but” he was “not exactly sure.” He got out of his vehicle and observed a body lying in the road near the rear passenger side of the other car. He spoke to the driver, who he described as “about 5’4” or 5’5”[,] about 130 to 140 pounds,” with “dark hair just below her shoulders” and wearing “a sport blazer and pleated slacks.” After unsuccessfully trying to calm her down and get her name, he wrote his name, cell number and other information on a piece of paper and gave it to her in case anyone needed to get in touch with him. At this time, other vehicles were arriving at the scene. He walked over to his truck to get his cell phone. Once in the truck, he observed other people at the scene with cell phones, and assuming they were calling 911 he drove to the mill to unload. On July 15, 2011, while Merchant’s initial motion for summary judgment was pending, Steady testified at a deposition as a nonparty witness that he observed a “goldish color” vehicle that he believed was a Mazda MPV van fail to stop for a stop sign and cross the intersection of the Shore Airport Road and New York State Routes 74 and 22. Steady testified that there were no other vehicles in the area. He testified that he saw the headlights of the Mazda bounce, its brake lights come on, and the backup lights come on. Steady claims that after getting out of his vehicle he observed a body on the ground near the rear bumper of the Mazda. The operator was a female with “brunette” hair and dressed in a “dress jacket” and pleated pants. He believes she was on her phone.
The court has considered the following papers in connection with the motion and cross motions: notice of motion dated June *156 20, 2011 supported by an affidavit of Maureen G. Fatcheric, Esq., sworn to June 20, 2011, with exhibits A through I; affidavit of Rosemary Bravetti, sworn to June 10, 2011, with exhibits A through B, and memorandum of law dated June 20, 2011; affidavit of Carolyn B. George, Esq., sworn to July 26, 2011, in opposition to motion; reply affidavit of Maureen G. Fatcheric, Esq., sworn to September 8, 2011; cross-notice of motion dated September 14, 2011, supported by an affidavit of Carolyn B. George, Esq., sworn to September 13, 2011, with exhibits A through F; notice of cross motion dated September 26, 2011, supported by an affidavit of Kristin L. Walker, Esq., sworn to September 26, 2011, with exhibits A and B; affirmation of Carrie McLoughlin Noll, Esq., dated November 11, 2011, with exhibits A through E, and memorandum of law dated November 11, 2011; reply affidavit of Kristin L. Walker, Esq., sworn to November 17, 2011.
B.
It is well-settled that summary judgment “is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues (Millerton Agway Coop. v. Briarcliff Farms, 17 NY2d 57)” (Andre v Pomeroy, 35 NY2d 361, 364 [1974]). In order for a party to be entitled to summary judgment, “it must clearly appear that no material and triable issue of fact is presented (Di Menna & Sons v. City of New York, 301 N. Y. 118)” (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]), and “ ‘issue-finding, rather than issue-determination, is the key to the procedure’ (Esteve v. Avad, 271 App. Div. 725, 727)” (id.; see also Benizzi v Bank of the Hudson, 50 AD3d 1372, 1373 [2008]; Gadani v Dormitory Auth. of State of N.Y., 43 AD3d 1218, 1219 [2007]). Summary judgment “should not be granted where there is any doubt as to the existence of such issues, or where the issue is ‘arguable’. (Barrett v. Jacobs, 255 N. Y. 520, 522)” (Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439, 441 [1968]).
“To obtain summary judgment it is necessary that the movant establish his cause of action or defense ‘sufficiently to warrant the court as a matter of law in directing judgment’ in his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible form” (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979]). “Accordingly, if the movant does not submit suf *157 ficient evidence on a particular issue or cause of action to justify judgment as a matter of law, the burden never shifts to the adversary to submit evidence sufficient to raise a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320). Even where there is no opposition to a motion for summary judgment, the court is not relieved of its obligation to ensure that the movant has demonstrated his or her entitlement to the relief requested.” (Zecca v Riccardelli, 293 AD2d 31, 34 [2002].)
C.
The terms of an insurance contract
“are generally to be taken and understood in their plain, ordinary and proper sense (Johnson v. Travelers Insurance Co. 269 N. Y. 401, 408) [,]... [and] resort to a literal construction may not be had where . . . such a construction would lead to an obvious absurdity (Silverstein v. Metropolitan Life Ins. Co. 254 N. Y. 81)” (McGrail v Equitable Life Assur. Socy. of U. S., 292 NY 419, 424 [1944]).
“[T]he policy must be read as a whole (Loblaw, Inc. v Employers’ Liab. Assur. Corp., 85 AD2d 880, 881, affd 57 NY2d 872), through the eyes of the average reasonable person (Prince v ITT Life Ins. Corp., supra., at 780)[,] . . . [and] in a practical way, so as not to revise or extend the risk, but with a view toward common speech and to what was reasonably intended by the parties when the policy was written and accepted (De Forte v Allstate Ins. Co., 81 AD2d 465, 468, appeal dismissed 54 NY2d 1027)” (Cetta v Robinson, 145 AD2d 820, 822 [1988]).
“Generally, ‘policies of insurance are to be construed liberally in favor of the insured and strictly against the insurer’ (Penna v Federal Ins. Co., 28 AD3d 731, 731 [2006]; see Government Empls. Ins. Co. v Kligler, 42 NY2d 863, 864 [1977]; see generally Turkow v Erie Ins. Co., 20 AD3d 649, 650 [2005]). Where ambiguity exists as to coverage, doubt should be resolved in favor of the insured (see Handelsman v Sea Ins. Co., 85 NY2d 96, 101 [1994]; Penna v Federal Ins. Co., 28 AD3d at 731)” (Matter of Liberty Mut. Fire Ins. Co. [Malatino], 75 AD3d 967, 968 [2010]).
Finally, “[c] overage ... is not determined merely on the basis *158 of the insuring clause, but must be determined upon the basis of the combination of the insurance clause and exclusions (Schiff Assocs. v Flack, 51 NY2d 692, 697- 698)” (General Acc. Ins. Co. v United States Fid. & Guar. Ins. Co., 193 AD2d 135, 137 [1993]).
Review of the policy provisions here reveals that the SUM endorsement in the policy defined “[t]he unqualified term ‘insured’ [to] [mean] . . . [y]ou, as the named insured and, while residents of the same household, your spouse and the relative of either you or your spouse.”[1] Similarly, “survivor rights” coverage was afforded to “you or your spouse, if a resident of the same household,” should either one die, in which event “this SUM coverage shall cover . . . [t]he survivor as named insured [and] . . . [t]he decedent’s legal representative as named insured, but only while acting within the scope of such representative’s duties as such.”[2] At the time the policy was issued, “spousal liability” was excluded,[3] but Merchants issued a notice to the LLC that “upon written request of an insured, and upon payment of the premium” it would provide “Supplemental Spousal Liability Insurance coverage . . . covering] the liability of an insured spouse because of the death of or injury to his or her spouse, even where the injured spouse must prove the culpable conduct of the insured spouse.” Also, the policy excluded as an “insured” a member of a limited liability company only “while moving property to or from a covered ‘auto’ ” or “for a covered ‘auto’ owned by him or her or a member of his or her household.”[4] No other language can be found in the policy *159 excluding members of a limited liability company from coverage.
Only by employing a construction which allows for a member of the limited liability company who is a “natural person” (Limited Liability Company Law § 102 [w]) to be an “insured” under the policy can these policy provisions be given any effect; otherwise they are illusory. Applying the foregoing legal principles to the provisions in Merchants’ policy, Morette is an “insured” for whom SUM benefits are provided. Merchants furnished SUM coverage to an “insured” who sustains bodily injury by physical contact with an unidentified motor vehicle. Reading the policy as a whole “ ‘to determine its purpose and effect and the apparent intent of the parties’ (see, Murray Oil Prods, v Royal Exch. Assur. Co., 21 NY2d 440, 445)” (A. Meyers & Sons Corp. v Zurich Am. Ins. Group, 74 NY2d 298, 303 [1989]), the fact that the LLC was the named insured does not preclude Morette, as the sole member of that company, from being an “insured” entitled to coverage.
Merchants relies on case law holding that a business automobile policy issued to a corporation does not provide uninsured motorist coverage to a family member of the sole shareholders of the corporation (Buckner v Motor Veh. Acc. Indem. Corp., 66 NY2d 211 [1985]; Gallaher v Republic Franklin Ins. Co., 70 AD3d 1359 [2010]; Siragusa v Granite State Ins. Co., 65 AD3d 1216 [2009]). This rule does not apply to limited liability companies to the extent that its members are “natural persons.”
“The LLC was designed as a hybrid of the corporate and limited partnership forms, offering the tax benefits and operating flexibility of a limited partnership with the limited liability protection of a corporation. See Weber v. King, 110 F. Supp. 2d 124, 131 (E.D.N.Y. 2000); see also N.Y. Practice § 1:2 (explaining that the NYLLCL drew upon the N.Y. Revised Limited Partnership Act and N.Y. Business Corporation Law)” (Bischoff v Boar’s Head Provisions Co., Inc., 436 F Supp 2d 626, 630 [SD NY 2006]).
Significantly, a limited liability company is “an unincorporated organization of one or more persons having limited liability for the contractual obligations and other liabilities of the business” *160 (Limited Liability Company Law § 102 [m] [emphasis added]). A limited liability company is more akin to a partnership (see Partnership Law §§ 2, 10) since both entities are “combination[s] of individuals, who can suffer injuries and do have spouses, households and relatives” (Buckner v Motor Veh. Acc. Indem. Corp. at 214). Notably, in Matter of Aetna Cas. & Sur. Co. v Mantovani (240 AD2d 566 [1997], lv denied 90 NY2d 810 [1997]), an arbitration award in favor of a partner for underinsured motorist benefits under a business automobile policy issued to the partnership was upheld.
Merchants’ motion for summary judgment dismissing plaintiffs’ complaint is denied, without costs. However, because a nonmoving party may be awarded summary judgment “with respect to a cause of action or issue that is the subject of the motions before the court” (Dunham v Hilco Constr. Co., 89 NY2d 425, 430 [1996] [citations omitted]), and this court having searched the record, plaintiffs are granted partial summary judgment (CPLR 3212 [b]) determining that, subject to compliance with other conditions of the policy, the plaintiffs are entitled to SUM benefits for Morette’s injuries and death. “[T]he entry of the summary judgment shall be held in abeyance pending the determination of” (CPLR 3212 [e] [2]) the remaining issues raised by the pleadings.
D.
The defendants’ cross motions for summary judgment, on the ground that plaintiffs have not taken “all reasonable efforts” to identify the motor vehicle and its owner and driver which struck Morette, are denied as the defendants have not met their burden of proof. Johnston’s statement that he believes Steady was involved in the accident is pure speculation. “ ‘ [Conclusions based upon surmise, conjecture, speculation or assertions are without probative value’ (Dapp v Larson, 240 AD2d 918, 919, quoting Maiorano v Price Chopper Operating Co., 221 AD2d 698, 699; see, Whiting v Bella Vista Dev. Corp., 267 AD2d 662, 663)” (Denny v New York State Indus. for Disabled, 291 AD2d 615, 616 [2002] [some internal quotation marks omitted]). Steady’s written statement and deposition testimony regarding the Mazda van and his own conduct are similarly insufficient to warrant the award of summary judgment to the defendants. “Viewing the evidence in a light most favorable to the plaintiffis] as the parities] opposing summary judgment, and giving [them] the benefit of every favorable inference (see, Sheryll v L & J Hairstylists of Plainview, 272 AD2d 603; Rock *161 owitz v City of New York, 255 AD2d 434)” (Perez v Exel Logistics, 278 AD2d 213, 214 [2000]; see also Greco v Boyce, 262 AD2d 734 [1999]), material issues of fact exist requiring trial. The defendants’ cross motions are thus denied without costs.

. Exhibit B to Bravetti affidavit: New York Supplementary Uninsured/ Under-insured Motorists Endorsement (CA 31 07 11 98), at 1, para 1 (a) (1).

. Exhibit B to Bravetti affidavit: New York Supplementary Uninsured/ Under-insured Motorists Endorsement (CA 31 07 11 98), at 4, para 16 (a), (b).

. Exhibit B to Bravetti affidavit: New York Changes In Business Auto, Business Auto Physical Damage, Motor Carrier and Truckers Coverage Forms (CA 01 12 03 06), at 2, para A (4) (j).

. Exhibit B to Bravetti affidavit: Business Auto Coverage Form (CA 00 01 03 06), at 2, Section II — Liability Coverage, A. coverage, 1. Who Is An Insured, para b. (4), (5):
“1. Who Is An Insured
“The following are ‘insureds’: . . .
“b. Anyone else while using with your permission a covered ‘auto’ you own, hire or borrow, except: . . .
“(4) Anyone other than your ‘employees’, partners (if you are a partnership), members (if you are a limited liability company) . . . while moving property to or from a covered ‘auto’.
*159 “(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered ‘auto’ owned by him or her or a member of his or her household.”